PAULINE MUELLER v. GRAND GROVE * * * UNITED ANCIENT ORDER OF DRUIDS.[1]

July 9, 1897.

Nos. 10,584—(201).[2]

**Life Insurance—Mutual Association—Payment of Monthly Dues.**

In an action brought upon a certificate issued by defendant association to a member of a subordinate grove, and certifying that the beneficiary therein named was entitled to the benefits of a specified fund, known as the "Widows' and Orphans' Fund," upon the death of the member, certain articles of the constitution of the association considered and construed. *Held,* that the "monthly contributions" provided for in section 1, art. 5, are the "monthly dues" required to be paid by the terms of section 2, same article.

**Same—Member in Good Standing.**

And *held* that, according to these articles, the member must be "in good standing" at the time of his decease, to entitle his beneficiary to share in the benefits of this fund. The beneficiary of a member who is in arrears for nonpayment of monthly dues for more than thirty days, and whose name has properly been stricken from the rolls, is not a member in good standing.

**Same—Payment in Accordance with Articles—Waiver.**

When joining defendant association, each member paid as a fee into its treasury, and into the fund before mentioned, a small sum of money. He

1 Reported in 72 N. W. 48.        2 April 1897, term.

thereafter paid monthly dues to the treasurer of the subordinate grove, and special assessments, if required. At the death of a member in good standing, defendant's secretary was by the articles authorized and required to collect from each subordinate grove a sum equal to one dollar for each of its members; and the amount thus collected, coming out of the treasuries of the subordinate groves, constituted the fund out of which the beneficiary was paid. *Held,* that if the subordinate groves have, by a long-continued course of conduct, misled their members respecting the payment of monthly dues; have created a belief that payment need not be made in strict accordance with the articles, and will not be exacted on the day stipulated; have thus led the members to rely upon a belief that delay in payment is unobjectionable, and will not affect their good standing, or their rights and interests in the fund in question,—payment in strict compliance with the articles has been waived, and the defendant association cannot claim that such members are not in good standing, if delinquent in accordance with the custom, and is estopped from insisting upon a forfeiture.

#### Same—Evidence of Waiver.

*Held,* in the case at bar, that the evidence was sufficient to support a finding that, within this rule, there had been a waiver, and that the deceased member, although delinquent as to his dues, was a member in good standing when he died.

#### Same—Notice of Death—Evidence.

Assignments of error relative to the admission of certain letters in evidence discussed, the same having been admitted as tending to support an allegation in the complaint that defendant had been duly notified of the death prior to the commencement of the action. *Held,* in view of the vagueness of the article relating to proof of the death of a member, and the fact that the letters were treated by the board of directors of the association as a compliance with the articles, and as sufficient proof of the fact therein stated, that they were properly admitted in evidence, as tending to prove the allegation in the complaint as to notice.

Appeal by defendant from an order of the district court for Hennepin county, Elliott, J., denying its motion for a new trial, after an order for judgment for plaintiff. Affirmed.

*John H. Ives,* for appellant.

*Adams & Southworth,* for respondent.

COLLINS, J.

The defendant is an association incorporated under the laws of this state, and its members, upon joining a subordinate grove, be-

come entitled to the rights, privileges, and benefits of what is known as a "Widows' and Orphans' Fund"; receiving a certificate in which it is stated that the member is thus entitled, so long as he shall comply with its laws, subject in all respects to the provisions of the constitution of the grand grove and of its subordinate groves, and to all amendments which may be made thereto. It is also provided in each certificate that in case of the death of the member the benefits resulting from the membership shall be paid to a designated beneficiary. One Joseph Mueller became a member of this organization, receiving a certificate of the above import, in which this plaintiff (then his wife) was designated as beneficiary. He died June 20, 1895; and this was an action brought to recover the amount to which she was entitled, it was averred, out of the fund in question. At the conclusion of the trial it was agreed that the jury might be discharged, and the cause decided by the court. Thereafter, upon findings of fact, the court ordered judgment in plaintiff's favor for the sum of $1,000, with interest and costs. The appeal is from an order denying defendant's motion for a new trial.

The assignments of error from 1 to 4, inclusive, go to rulings of the court on the trial whereby certain letters were received in evidence over defendant's objections. The remaining assignments challenge certain findings of fact, and also the conclusion of law. Of these, the sixth, seventh, eighth, and ninth may be considered together, as they were by counsel on the argument.

The constitution of the defendant association contains articles for its own government, and for the proper administration of the widows' and orphans' fund, as well as articles for the government of the subordinate groves. It is, however, quite crude, and in many respects indefinite and incomplete. The plan is for each member, upon joining, to pay a specified sum, according to his age, into this special fund, and thereafter to pay certain sums every month to the secretary of the subordinate grove of which he is a member, two-thirds of which is set apart for relief purposes. It is provided by section 2, art. 10, that the widows' and orphans' fund shall be expended exclusively for the benefit of the heirs or beneficiaries of deceased members. By section 3 it is provided that every person who is or shall become a member shall be entitled to the benefits

of this fund, "and at the death of a brother in good standing the assessment necessary shall be paid out of" this fund. There are other provisions in reference to the form of a certificate to be furnished to the defendant's secretary by the secretary of the subordinate grove in case of the death of a member of the latter "in good standing," and in section 5 is a provision that "on the death of a member in good standing" the benefit shall go (be paid) to his relatives, in a certain order, unless otherwise directed in the certificate. The beneficiary named must be a wife, or the member's children, or his parents, brothers, or sisters, or, lastly, his subordinate grove. Evidently the purpose is that those dependent upon the member shall, in case of his decease, receive the benefits of his membership.

In section 6 it is provided that, on the death of a member "in good standing," his properly constituted beneficiary "shall be paid according to membership the sum of one dollar per member, not exceeding in the aggregate the sum of one thousand dollars; the same to be paid within ninety days after presentation of proper proof of death" to defendant's board of directors; this board consisting of certain designated officers, having charge of and administering the widows' and orphans' fund. On the death of a member the defendant's secretary is required by section 14, art. 10, to "collect a sum from each subordinate grove equal to one dollar for each member"; the amount thus collected to be paid into the fund for disbursement to the beneficiary of such deceased member.

Turning now to "Art. 5, Dues and Fees," we find that by section 1 "the regular contributions to the grove fund shall be not less than eighteen dollars per year, payable in monthly instalments in advance. Two-thirds of this amount to be set aside by the grove for relief purposes." Section 2 reads:

"Every member shall pay his monthly dues on or before the first meeting of each month, in advance, and no member shall be entitled to the semiannual password until such dues are paid. Such member shall have no right to benefits while in arrears."

Sections 4 and 5 are as follows:

"Sec. 4. Arrearages of a member shall consist of nonpayment of monthly dues, or any special assessments of the grand or subordi-

nate grove. When a member shall be 30 days in arrears, he shall be dropped from the roll.

"Sec. 5. A member dropped from the roll for nonpayment of dues or assessments or otherwise shall be entitled to no rights or privileges by reason of his former membership. No member dropped from the roll for nonpayment of dues or assessments shall be restored to membership, except by application to be reinstated, which application shall be accompanied by an amount equal to all dues and assessments which have accrued and been levied since such member was dropped from the roll."

Taking these various provisions as a whole, and construing them for the purpose of giving effect to each in accordance with the intent of the members, we are justified in holding that the word "contributions," in section 1, art. 5, and the word "dues," in the section following, mean the same thing. The contributions mentioned in the first section, of not less than $18 per year, payable in monthly instalments, are the monthly dues provided for in the second section; that is, every member shall pay $1.50 per month, at least, in advance, and on or before the first meeting in each month, and, if he fails in making these payments, he is in arrears, speaking technically, to his subordinate grove, under the provisions of sections 2 and 4 of article 5. He may be required, under section 2, to pay more than $1.50 per month, should the contributions or dues be fixed at a greater amount, and special assessments may be made under section 4, and under the same section a member may be dropped from the rolls for nonpayment of dues. That the regular contributions or dues in the subordinate grove of which Mueller was a member were considered to be $1.50 per month, payable as above indicated, and that its members construed sections 1 and 2 of article 5 exactly as we have, in respect to monthly assessments and payments, is evident from such part of the secretary's book of accounts as was introduced in evidence.

It is also clear that the only method of accumulating or increasing the widows' and orphans' fund was by assessment upon the subordinate groves whenever the defendant's secretary was notified of a death. He was then authorized to collect from each subordinate grove a sum equal to one dollar for each member of the latter. This, so far as shown, was the only method by which money could be obtained for this particular fund, except the small sums paid in by

members as they joined the order. Evidently every subordinate grove was called upon and required to pay a sum equal to one dollar for every member upon the rolls. That a member was in arrears to his grove, and delinquent, was of no particular concern to the defendant association, or to the board which administered the widows' and orphans' fund. It is evident that the fund was affected only when membership ceased by dropping the name of the member from the roll of the subordinate grove, the result being a shrinkage in the amount collected from that grove.

But, from the various sections found in article 10, it is plain that, unless a member was in good standing at the time of his decease, his beneficiary was not entitled to participate in the fund. While provision was made for the dropping of a member's name from the rolls if his default continued for 30 days, it does not appear, fairly construing the articles, that his membership rights continued until this was actually done. His certificate assured him of these rights so long as he complied with the articles of the association. These articles expressly stated that while in arrears the members had no rights to benefits, and "arrears" were defined to be the nonpayment of monthly dues or any special assessments. If a member was in arrears for dues, and was liable to have his name stricken from the rolls, he cannot be said to have been in good standing, as the term should ordinarily be construed.

That Mueller at the time of his decease, June 20, 1895, had not paid his dues for the months of April, May, and June, 1895; that at a meeting of the subordinate grove held June 11 his name was stricken from the membership list, the stated reason being that he was not in good standing; and that no notice was given to him that he was in arrears, or that any action would be taken at the meeting,—stand conceded.

It is contended by plaintiff's counsel that this action was futile, because Mueller was not notified of arrearages, and was given no opportunity to be heard prior to the action. We need not pass upon this, for it is unnecessary.

We are of the opinion that plaintiff was entitled to recover, independently of what may have been Mueller's right to have notice before his name could be stricken from the rolls; for upon an in-

69 M.—16

spection of the secretary's account with Mueller, as kept on the book before referred to, it plainly appears, whatever construction is to be placed upon the articles with reference to the payment of dues, and the effect of nonpayment at maturity, that Mueller had made a practice of paying, and the subordinate grove had been in the habit of receiving, his monthly dues, at irregular intervals, and in such sums as he could pay. His account seems to have been opened in February, 1890, and he was frequently permitted to be two months in arrears. The grove received payments of dues for two months on nine different occasions while he was a member. December 1, 1894, he was in arrears for three months' dues, and was then permitted to pay in full $4.50. He was two months in arrears when he paid $3, February 5, 1895. He was in arrears a few days when making his last payment, in March, 1895. And there is nothing whatever in the record to show that this course of conduct was not perfectly satisfactory to the members of the subordinate grove, that they ever objected to it, or that Mueller's practice or custom with reference to payments was unusual or extraordinary.

If, then, he was permitted without objection to pay his dues at irregular intervals, this permission covering a period of more than three years, the subordinate grove accepting his money, without the slightest objection, when he got ready to pay, there was a waiver of strict compliance with the various articles which required prompt payment. The subordinate grove had by its conduct led him to suppose and believe that a default of two or three months in any one payment would not affect his standing as a member, or his right and interest in the fund out of which his beneficiary would be paid in case of his decease. The defendant could not, after long-continued conduct of this nature, by which he was lulled into the conviction that his delay was unobjectionable and his good standing unaffected, suddenly, and without notice, insist upon the forfeiture, and that he was no longer in good standing, and had forfeited all rights and privileges.

The rule which is applied where assessments are made upon members of mutual associations organized for insurance purposes is in point here. It is stated as follows:

If the company has, by its course of conduct, acts, or declarations, misled the insured in any way in regard to the payment of premiums, or created a belief on the part of the insured that strict compliance with the letter of the contract as to payment of the premium on the day stipulated will not be exacted, and the insured in consequence fails to pay on the day appointed, the company will be held to have waived the requirement, and will be estopped from setting up the condition as cause for forfeiture. 2 Bacon, Ben. Soc. § 433, and cases cited.

The members of a subordinate grove were bound to pay into its treasury, and the groves were bound to collect from their members, certain fixed amounts, as monthly contributions or dues. The secretary of defendant association was authorized and required to collect from each subordinate grove a sum equal to one dollar for each member thereof upon being notified of the death of a member. The amount so collected came out of the moneys in the treasury of the subordinate grove,—the accumulations of contributions and dues which had been paid in. If the subordinate grove had, by a long-continued course of conduct, misled its members respecting the payment of dues; had created a belief on their part that payment of such dues need not be made in strict accordance with the articles of association, and would not be exacted on the day stipulated; had thus led the members to rely upon a belief that delay in payment was unobjectionable, and would not affect the members' good standing, or their rights and interests in the fund in question,—it must be held that prompt payment had been waived, and that the defendant association is estopped from insisting upon a forfeiture. In the case at bar the evidence was sufficient to support a finding that there had been a waiver of prompt payment, and that, within this rule, Mueller was in good standing when he died.

This disposes of the case, except as to the four assignments of error first mentioned. The complaint set forth that defendant had been duly notified of the death of Mueller, and had refused to pay the sum claimed to be due. The answer contained a general denial, and, after setting out certain articles of defendant's constitution, admitted that Mueller had been a member, but alleged that he had ceased to be a member, was not in good standing when he died, was in arrears for dues, and had been dropped from the rolls for non-

payment of dues, as hereinbefore stated.    There were no averments. in the answer as to any article of the association which provided for proof of death, or that proof was required as a condition precedent to the right of action.    For the purpose of showing that notice of death had been given, one of plaintiff's attorneys, after obtaining from defendant's secretary an admission that he had received letters from the attorneys in reference to the claim, produced a letter which he had received from the secretary in reply, and offered it in evidence.    It was received over defendant's objection and exception. Other letters of the same nature—one from plaintiff's attorneys to the secretary, and the latter's answer, and a letter from defendant's attorneys—were also received in evidence over objections made by defendant's counsel.    The court found as facts that defendant association had been duly notified of the death of Mueller, had refused to furnish blanks that more formal proof might be made, and had denied all liability under the certificate, for reasons which have been stated, and had refused to pay.

The articles of association, as before stated, provided for payment to the beneficiary within 90 days "after presentation of proper proof of death to the board of directors."    Nothing further was required, and, except as to the language quoted, the articles made no provision for proof of death.    The letter of date October 14 contained a formal notification of Mueller's death, with a request that proper blanks be sent if formal proofs were required.    Payment was also demanded.    The defendant's secretary replied, saying that Mueller's name did not appear upon the membership rolls of the subordinate grove.    October 21 another letter was written to defendant's secretary, in which payment was again demanded, and another request made that blanks be sent if more formal proof of Mueller's death was required.    From the reply to this letter,—the reply being written by defendant's attorney,—it appears that the board of directors, having investigated the claim, refused to recognize Mueller as a member in good standing when he died, and denied that defendant was liable to his beneficiary in any sum.    The board seems to have been satisfied with such proof of the death as was contained in the letters of October 14 and 21, and to have treated these letters as containing proof of the death sufficient to satisfy the article

we have referred to. Although blanks were asked for, upon which, if required, formal proof might be made, they were not sent. Taking into consideration the very vague article in reference to proofs in case of death, and the fact that the board acted upon these letters and made no claim that the proof therein contained was not a compliance with the article, we are of the opinion that the letters were admissible in evidence as tending to establish the allegation in the complaint that defendant had been duly notified of Mueller's decease. And, if admissible, they warranted the finding we have mentioned.

Order affirmed.