Vol. 108]. JANUARY TERM, 1900. 141

Supreme Council Catholic Knights of America v. Geo. Winters, Admr.

CASE 18—ACTION TO RECOVER ON A BENEFIT CERTIFICATE—MARCH 17.

# Supreme Council Catholic Knights of America v. Geo. Winters, Admr.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

GEORGE WINTERS, ADMR., BROUGHT SUIT AGAINST THE SUPREME COUN-
CIL CATHOLIC KNIGHTS OF AMERICA ON A BENEFIT CERTIFICATE.

JUDGMENT FOR PLAINTIFF. DEFENDANT APPEALS. REVERSED.

SUSPENSION OF MEMBERS—EFFECT AS TO DEATH BENEFITS—WAIVER OF
FORFEITURE.

Held: 1. The suspension of a member for non-payment of assessments,
pursuant to a by-law of the society, not only deprived him of the
social advantages of the organization, but extinguished the rights
of the beneficiaries under his benefit certificate, though there was
no express provision for a forfeiture of benefits.

2. Where the society has been accustomed to accept from a member
without question payment of past due assessments, and by its
uniform course of dealing with him has induced him to believe
that his failure to pay assessments when due will not work a for-
feiture, it waives the right to claim a forfeiture on that ground.

3. Though it was customary for the society, in addition to the an-
nouncement required by the by-laws to be made at the regular
meeting thirty days before the maturity of each assessment, to
give thirty days' notice of the assessment through the mail, yet
if the member actually received notice of the assessments, and,
when he realized the effect of what he said, voluntarily notified
the lodge, through its secretary, that he would not pay them, or
consent that they should be paid or assumed for him by another,
and that he had determined to sever his connection with the
order, there was a waiver of the thirty-days' notice through the
mail, as the duty to give that notice rested only upon custom.

NEWTON G. ROGERS, ATTORNEY FOR APPELLANT.

    (No brief in record.)

JOHN W. BARR AND ALEX G. BARRET, ATTORNEYS FOR APPELLEE.

Supreme Council Catholic Knights of America v. Geo. Winters, Admr.

1. In determining whether there has been a waiver of the forfeiture incurred by the non-payment of the premium, on the day it was due, the test is, whether the insurer, by his course of dealing with the assured, induced him to believe that the conditions of the policy declaring a forfeiture for non-payment, on the day and in the manner prescribed, will not be enforced, but that payment will be accepted on a subsequent day or in a different manner; and when such belief has been induced and acted on by the insured, the insurer will be estopped from insisting on the forfeiture.

2. The benefit associations are subject to the same estoppel as ordinary insurance companies, and even the requirements of their charter can be waived.

### CITATIONS.

Nat. Mut. Ben. Assn. v. Jones, 84 Ky., 110; Hartford Life Ins. Co. v. Unsell, 144 U. S., 439; Sweetser v. Odd Fellows, 117 Ind., 97; 7 Ky. Law Rep., 301; 70 N. W., 1113; 81 Iowa, 400; Blanchard v. Atlantic M. F. Ins. Co., 33 N. H., 9; Harrison v. Supreme Lodge, &c., 140 Ill., 301; Van Frank v. U. S. M. B. Assn., 158 Ill., 560; Karcher v. Supreme Lodge, 137 Mass., 368; Glarden v. Supreme Lodge, 50 Mo. App., 45; Supreme Lodge v. Keener, 25 S. W. Rep., 1084; Reichenbach v. Ellaby, 22 S. W. Rep., 573; Bacon on Benefit Societies, sec. 433.

OPINION OF THE COURT BY JUDGE BURNAM—REVERSING

Appellee, as administrator with the will annexed of the estate of George Winter, sought in this action to recover a judgment upon a benefit certificate, and appellant sought to escape liability on the ground that prior to the death of Winter he had resigned his membership in the organization and had surrendered all rights, claims, and demands growing out of the issuing of the certificate to him; and in the third paragraph of the answer it is alleged that, under the provisions of the policy sued on, the assured expressly agreed to pay all assessments, dues, and fines properly assessed against him according to the laws, rules, and regulations of the association, and that

in default of doing so, he was liable to suspension as a member, and to lose all the benefits and rights belonging thereto; that prior to his death he had neglected and refused to pay certain dues and assessments properly demanded of him as a member of the organization, after personal notice and demand therefor, and, being in default, he was suspended by the organization from all membership or rights therein, and was so suspended at the time of his death. Appellee in his reply denied that decedent had given up his rights and privileges as a member of the organization, or any benefit to be derived therefrom; and, in reply to the third paragraph of the answer, said that the defendant was estopped to plead the decedent's suspension for failure to pay assessments promptly, because it had by its agents, expressly told him that prompt payment was unnecessary, and because it had allowed the decedent to believe that prompt payment was unnecessary by having repeatedly accepted payments from him theretofore, long after the assessments were due. The trial before a jury resulted in a verdict and judgment for the appellee, under a peremptory instruction from the court based upon the theory that there was nothing in the charter, by-laws, certificate of membership, or contract of insurance which expressly provided that the suspension of a defaulting member by failure to pay dues and assessments should forfeit his right, or the right of his personal representatives, or beneficiaries, to recover the amount of the policy, in the event of his death, and that; in the absence of such an express provision, the defense of forfeiture could not be relied on.

Appellant is a mutual benefit or benevolent society, with its main office at Fort Wayne, Ind., with a branch order in Louisville, Ky., of which decedent became a member at the

144          KENTUCKY REPORTS.          [Vol. 108

Supreme Council Catholic Knights of America v. Geo. Winters, Admr.

time of its organization. Among other provisions of the policy issued to deceased is the following: "The said assured expressly agrees to pay all assessments, dues and fines assessed against him according to the laws, rules, and regulations of said supreme council which may now or hereafter govern the order." Section 171 of the by-laws provides: "Any branch failing to send assessments to the supreme treasurer within fifty-five days from date of notice shall be suspended by the supreme president. Any member who shall fail to pay such assessment as aforesaid shall be suspended from the branch by the acting president, and any branch, allowing such delinquent to remain without suspending him shall pay out of its general fund all assessments due from such member while he is permitted to remain in good standing." And section 166 provides: "Each member of this branch who has been suspended for non-payment of dues, fines, or assessments, applying to be reinstated, must pay the full amount for which he is in arrears for dues, all assessments and fines charged at date of suspension, and all debts on deaths that occurred on each assessment prior to his reinstatement, and shall also furnish the branch an affidavit that he is in sound health and has had no ailment during his suspension. The said affidavit shall be forwarded to the supreme secretary, provided that he apply for reinstatement within thirty days after the date of suspension, and pay a fine of $1.00, which fine shall be placed in the general fund of the order. After the expiration of thirty, and within ninety days, any member who has been suspended shall have the right to apply for reinstatement, and must pay the full amount for which he is in arrears for dues, all assessments, and fines due at the date of suspension, and all debts on deaths that occurred

Vol. 108]     JANUARY TERM, 1900.     145

Supreme Council Catholic Knights of America v. Geo. Winters, Admr.

prior to reinstatement, and shall furnish the branch the medical examiner's certificate, as prescribed for persons on original application." And section 167 provides: "After the expiration of ninety days, any member who has been suspended shall have the right to apply for admission as a new member on complying with all the regulations of the order governing applications." And section 170 provides that: "When an assessment is due, a notice shall be sent by the secretary of the supreme lodge to the recording secretary of the branch of the order, and it is made the duty of each recording secretary to read the notice of the assessment at the next meeting of the branch, which shall be the official call for the assessment, and each member shall pay the amount of his assessment at the second meeting thereafter, when the branch meets semi-monthly, and at the fourth meeting thereafter, when the branch meetings are held weekly."

There is no contradiction in the evidence that, pursuant to the rules and by-laws of the association, a call was made by the supreme council for assessments numbered 536 and 537, and that notice was sent to all the branches on the 16th day of June, 1896, notifying them that these assessments would be due on July 20, 1896, and that the secretary of the branch read this notice to the lodge. The evidence is also uncontradicted that the decedent failed to pay these assessments, and that on the night of July 20th, when the assessments became due, when the name of decedent was called, Mr. Hill, the secretary of the order, stated to the branch lodge that he had given decedent the usual thirty days' notice of the call, and had seen him in person, and notified him that the assessments would be due on the night of July 20th, and that decedent had in-

146        KENTUCKY REPORTS.        [Vol. 108

Supreme Council Catholic Knights of America v. Geo. Winters, Admr.

formed him that he did not intend to pay these assessments, and desired to terminate his connection with the order, at the same time paying to him his dues under assessments 534 and 535, which became due on the 6th of July, and which had been carried for him by the secretary as an accommodation, and that after this statement from the secretary decedent was, on motion, suspended for non-payment of calls 536 and 537. It may also be taken as an admitted fact that decedent had been repeatedly permitted to pay his assessments after they were due, previous to this time,—sometimes upon the guaranty of the secretary of the branch lodge, and sometimes upon the guaranty made by the lodge itself.

The first question to be considered is the effect which the order of suspension made by the lodge had upon the rights of deceased under his contract of insurance. It is insisted by appellee that the only effect of the suspension was to deprive the deceased of his social privileges of the order, and that it did not affect his right to recover on the policy sued on, for the reason that the contract did not, in express terms, provide for a forfeiture thereunder, and this is the view taken by the trial judge in his peremptory instruction to the jury; while appellant contends that the suspension for nonpayment of dues was in itself tantamount to a forfeiture, and deprived deceased not only of his social privileges, but of all right and benefit under his contract of insurance. By its articles of incorporation, appellant was empowered to make, establish, and put in execution such by-laws, ordinances, and regulations as were necessary for the organization, government, and management of its affairs, and pursuant to this power, section 171 of its by-laws, supra, was adopted, as was section 166, providing how a sus-

pended member could be re-instated, and the time in which application should be made.  As a member of the organization, decedent is charged with the knowledge of these by-laws, and, besides, it appears from the proof that he was warned by the secretary that the effect of a failure to provide for the payment of the assessments at the date of maturity would result in his suspension.  We are of opinion that, under these by-laws of the association, the suspension of a member, properly made, necessarily operates, not only to deprive him of the social advantages connected with the organization, but to extinguish his right, or the rights of his beneficiaries, to recover under his certificate of membership.  Under any other construction, a member might ignore or refuse to pay his dues to the association indefinitely, and yet at his death his heirs at law or the beneficiaries of the policy could maintain an action on the policy of insurance; thus putting it in the power of defaulting members to absolutely destroy the organization, and defeat the benevolent purpose for which it was created.

The plea of estoppel relied on in the reply presents a much more difficult question.  The case of Insurance Co. v. Unsell, 144 U. S., 439, (12 Sup. Ct. 671), (36 L. Ed., 496), was a suit against a life insurance company whose policy provided for the payment of premiums at stated times, and, further, that "the holder agrees and accepts the same upon the express condition that if either the monthly dues." etc., "are not paid to said company on the day due, then this certificate shall be null and void and of no effect, and no person shall be entitled to damages or the recovery of any moneys paid for protection while the certificate was in force;" and it was held that "the company may nevertheless, by its whole course of dealing with the assured,

and by accepting payments of overdue sums without inquiry as to his health, give him a right to believe that the question of his health would not be considered, and that the company would be willing to take his money shortly after it had become due without inquiry as to his health, and such a course of dealing may amount to a waiver of the conditions of forfeiture." And in the case of Insurance Co. v. Eggleston, 96 U. S., 572, 577, (24 L. Ed., 841, 843), Mr. Justice Bradley, speaking for the court, said: "Courts are always prompt to seize hold of any circumstances that indicate any election to waive a forfeiture, or any agreement to do so on which the party has relied and acted. Any agreement, declaration, or course of action, on the part of an insurance company, which leads a party insured honestly to believe that, by conforming thereto, a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract. The company is hereby estopped from enforcing the forfeiture." The same doctrine was anounced by this court in the case of Association v. Jones, 84 Ky., 110, and this seems to be the generally recognized law on this question.

The secretary of the branch lodge testified that on July 16th he received from Winter assessments 534 and 535, which were due on July 6th, and that the branch had frequently carried assessments for him after their maturity, previous to that time, without any order of suspension. Mike Winter, the son of the deceased, testified that he had frequently paid assessments for his father long after the maturity thereof, and that on one occasion these assessments amounted to as much as ten dollars or fifteen dol-

lars, and must have covered. eight or ten assessments. The secretary of the branch lodge also testified that it was a rule to give members thirty days' notice of an assessment. The postal card on which the notice was sent as to assessments numbered 536 and 537, which were due on the 20th day of July, although dated June 15th, shows that it was not actually mailed until June 28th. Therefore the deceased did not, in this instance, have the full benefit of the thirty days allowed by the rules prevailing in the branch order in which to make this payment. The secretary, however, testifies that in his interview with deceased on July 16th, at the time he paid assessments 534 and 535, he (deceased) notified him that he would not pay the assessments due on the 20th of July, and that he did not want anybody else to pay for him; that he desired to sever his connection with the organization, and that, upon being urged by him to reconsider his determination, he wound up the interview with these words, "I have told you that I wanted my name struck off the list, and if you pay the assessments you will have the loss;" that this conversation took place in the store of Mr. Hubbuch, where he was employed, and that Mr. Hubbuch was present, and heard the conversation. When Mr. Hubbuch was introduced as a witness, he testified that the deceased informed Hill that he did not want to pay his assessments any longer, but that he had heard him make the same remark frequently before, when under the influence of liquor, and that he continued to pay after that; that he was intoxicated at the time of the last interview with Hill, and that he did not attach any importance to his remarks about not paying; and we think he fails in many important particulars to fully corroborate the statements made by the secretary.

It is evident that the insured did not have the usual and customary thirty days' notice through the mail before assessments 536 and 537 fell due at the regular meeting of the branch lodge on the night of the 20th of July, as the postal card which communicated the notice was not actually deposited in the mail until the 28th of June, and, under the prevailing custom of the lodge, the deceased had a right to rely upon this notice through the mail, as well as the announcement made at the regular meeting thirty days before the maturity of each assessment; and the action of the lodge in suspending him from fellowship, etc., by reason of this notice, was unauthorized. But it must be remembered that this notice through the mail, in addition to the regular notice provided for by the by-laws of the association, was only a custom; and if, as a matter of fact, deceased actually received notice of the maturity of these assessments, and voluntarily notified the branch lodge, through its secretary, that he would not pay them, or consent that they should be paid or assumed for him by another, and that he had determined to sever his connection with the order at a time when he realized the effect of what he said upon his rights under his contract, it was a waiver of the customary thirty days' notice through the mail, as the latter notice was not a part of his contract of insurance, and was not given pursuant to any by-law of the association, but rested solely upon a habit which had grown into a custom; and the testimony on this vital point is sufficiently conflicting to have authorized the submission of this question to the jury. For reasons indicated herein, the judgment is reversed and cause remanded for a new trial consistent with this opinion.