GRAND LODGE ANCIENT ORDER OF UNITED WORKMEN

*v.*

JENNIE LACHMANN *et al.*

*Opinion filed October 25, 1902.*

1. BENEFIT SOCIETIES—*subordinate lodge acts as agent of the grand lodge.*   In Illinois the relation of subordinate lodges to the grand lodge, in beneficial organizations, is that of agency.

2. SAME—*when notice is admissible as tending to show waiver.*   In an action against a benefit society upon a benefit certificate, where the defendant denies liability upon the ground of the failure of the deceased to pay a certain assessment on the 28th day of February, at which time, under the constitution, he would be regarded as suspended and his rights forfeited, a notice from the subordinate lodge of which deceased was a member that his assessment must be paid by March 25 is admissible, as tending to show a waiver of the provision for immediate forfeiture.

*Grand Lodge A. O. U. W.* v. *Lachmann*, 101 Ill. App. 213, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

MATSON & EDWARDS, (JOHN P. AHRENS, of counsel,) for appellant.

ISRAEL SHRIMSKI, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Appellees brought this suit in the circuit court of Cook county against appellant on a beneficiary certificate for $2000, issued to their father, Benjamin Lachmann, payable to them at his death. On a trial by jury they recovered a judgment for $2364.16,—the amount of the certificate, with interest. The jury, at the request of the defendant, made special findings, but none of them were inconsistent with the general verdict. The Appellate Court has affirmed the judgment of the circuit court, and the defendant appeals.

Benjamin Lachmann died on March 24, 1897, and the defense upon the trial was, that he was not at the time of his death a member of the order in good standing, because he had failed to pay an assessment made on the 8th day of February, 1897, which was due on the 28th of that month. By the by-laws of the order it is provided that by the fact of the non-payment of an assessment the member shall stand suspended, and such suspension constitute a forfeiture and loss of all rights under or granted by such beneficiary certificate. It was not denied by the plaintiffs that the assessment due on the 28th day of February, (which was two assessments in one,) called in the record assessment No. 363, was not paid, but it was contended by them that it was not properly made, and if it was, the forfeiture which would have resulted from its non-payment was waived by the subsequent conduct of the defendant through the subordinate lodge of which

the deceased was a member. In the view we take of the case it will not be necessary to consider the question as to whether the assessment was properly made and legal notice thereof given, for the reason that, conceding those steps to have been regularly taken, there was evidence before the jury fairly tending to prove a waiver of the forfeiture.

By the constitution and by-laws it is provided that "any beneficiary certificate suspended by reason of non-payment of assessments thereon may be renewed, if the member be living, at any time within a period of three months from the date of such suspension," upon the single condition that "all assessments that have been made during the time of suspension shall be paid, including the pending assessments. * * * The financier shall report the same to the lodge at its next regular meeting. A vote of the lodge shall be taken, and if a majority of the votes cast be in favor of re-instatement, the member shall be re-instated." Assessment No. 363 was due February 28, 1897. The member had the right, therefore, at the time of his death, being less than thirty days after the failure to pay, to be re-instated by paying the assessments, without certificate of good health or other condition. On the 15th of March, being within thirty days from the date of the suspension, the following notice was sent him:

"AMERICAN LODGE No. 370 A. O. U. W.

CHICAGO, ILL., *March 15, 1897.*

"*Dear Sir and Brother*—You are hereby notified that you are in arrears as follows: Special assessment $.50; assessment $2.50; dues $1.50; special R. C. & P. C. T. $1.68, total sum $7.18, which you will please settle for not later than at our next meeting, which will be held on Thursday evening, March 25, at eight o'clock P. M., or you will stand suspended without further notice.            "Yours in C. H. & P.,

Ad. 468 McLain Avenue, City.       PETER KUSLER, *Recorder.*"

The last item means special relief call and per capita tax, both payable to the appellant grand lodge; also the

special assessment therein mentioned was payable to it. The $2.50 was the amount due on the two assessments known as No. 363.

It is argued at considerable length by counsel for appellant that this notice was improperly admitted in evidence, for the reason that the subordinate lodge had no right or authority to do anything, as against the appellant, which would waive the forfeiture, and because it could in no way act as a waiver of the conditions that existed on the 28th day of February, 1897. The objection was overruled and the defendant excepted. It is settled in this State that the relation of subordinate lodges to the grand lodge in societies of this kind is that of agency. (*High Court Independent Order of Foresters* v. *Schweitzer*, 171 Ill. 325; *Coverdale* v. *Royal Arcanum*, 193 id. 91.) In the former case we said (p. 328): "In associations of this character the relation of the members to the order is necessarily through the subordinate lodges, and when a forfeiture of the certificate of insurance is insisted upon, it is proper to show that the subordinate lodge, with full knowledge of the alleged cause of forfeiture, continued to treat the insurance as in full force, receiving the member's dues and paying the money over to the supreme lodge. We are unable to see how such societies could be conducted upon any other principle without great injustice to the members." The greater part of the fund claimed by the notice was for the grand lodge, and would have been paid to it if it had been collected. Whether the notice was proof, in itself, of a waiver of the forfeiture or not, it was competent evidence tending to prove that fact to be considered by the jury. We think the trial court committed no error in overruling the objections to the notice and admitting it in evidence.

There was also evidence tending to show that by the custom of the local lodge to which the deceased belonged, in dealing with its members, forfeitures were not insisted upon for failing to make prompt payment of assessments.

J. M. Hughes, the financier, speaking of delinquent members, testified: "If he comes around on the 24th of next month I would take his money. I would take his money any time afterwards, if he comes around, without any order of the supreme lodge or subordinate lodge. If I had him marked suspended I would simply make an entry in the cash book, transfer it to the ledger, report it to the next meeting of the lodge, and have him re-instated. He has to be re-instated by a vote of the lodge after I accept the money." In *Railway Conductors' Benefit Ass.* v. *Tucker*, 157 Ill. 194, we said (p. 201): "What acts will in all cases amount to a waiver of a forfeiture of membership in a mutual benefit society cannot be definitely stated, but conduct on the part of the society which amounts to a recognition of a member's claim to the continuing rights of membership will relieve him from the consequences of his default. The receipt of assessments after default in payment is a common form of waiver. The question of waiver is in most cases a question of fact for the jury.— 16 Am. & Eng. Ency. of Law, p. 83." See Bacon on Benefit Societies, sec. 433, quoted in the opinion of the Appellate Court.

The notice of the 15th of March certainly had a tendency to induce in the mind of Benjamin Lachmann the belief that he would remain a member of the order, in good standing, until the 25th of March, and that he would not stand suspended until after that time. It is said he knew, and was bound to know, that he was suspended, from the constitution and by-laws of the order, which entered into and were a part of his contract with the lodge, from and after February 28, for a failure to pay the assessments due on that day. It is true that by the letter of the contract that was the effect of the non-payment of the assessments on that day, but he also knew that that requirement could be waived, and also that by the terms of the same contract the suspension would be removed if he paid within thirty days. The giving of that

notice, as well as the habit of the lodge, would lead any reasonable mind to the conclusion that within thirty days forfeiture for non-payment of assessment would not be insisted upon. That Lachmann did so understand is shown by the fact that he had placed the notice, with the amount of money it called for, in his desk, and expressed the intention of paying it the next night, but suddenly died on the 24th.

It is said by counsel for the appellant the question is not what the deceased believed or had a right to believe from the notice, but was he by the notice prevented from acting, or influenced to act, in any manner different from that in which he would have acted had he not received the notice. We think the evidence fairly tended to show that he was induced to delay the payment of money to the financier by the statement in the notice that he had until March 25, at eight o'clock P. M., to make it, and, in effect, that he would only stand suspended after that time. Suppose, without any notice at all, he had paid to the financier the amount of all assessments that had been made during the time of suspension, including the assessment due February 28, at a time within the thirty days, but had died the day before the meeting of the lodge at which a vote could be had to re-instate him; could it then have been said, merely because a formal vote of the lodge had not been taken re-instating him, that his beneficial certificate was absolutely forfeited? If he had made the payment within the thirty days and had lived until the meeting of March 25, the lodge would have been bound to re-instate him. Nor is it conceivable that a beneficiary society of this kind would refuse to re-instate him upon a complete compliance with the requirements of the order. This notice, therefore, was calculated to create in his mind the belief that by making the payment at the time mentioned therein he would be formally re-instated, and that earlier payment was not necessary to constitute him a member in good standing.

We think there was evidence before the jury fairly tending to prove a waiver of the forfeiture, and that is the only question with which we are concerned, the weight or preponderance of the testimony having been settled by the verdict of the jury and the judgment of affirmance in the Appellate Court.

Objection is made to each of the seven instructions given on behalf of the plaintiff below. They all place the right of recovery upon the ground that the defendant had waived its right to insist upon a forfeiture of the certificate, and, we think, state the law on that subject correctly. The first instruction asked on behalf of the defendant told the jury that if they believed, from the evidence, that the deceased was legally suspended on the 28th day of February, 1897, "then, before the plaintiffs can recover, they must show, by a preponderance of the evidence, that he was re-instated according to the conditions and by-laws of the order, and that in such re-instatement he complied, in every particular, with all the laws, rules and regulations of the order that were in force at the time." The court added: "Or that the defendant waived the suspension of the deceased and the forfeiture of his beneficiary certificate." It is argued that this addition was improper; but if we are correct in the view that there was evidence fairly tending to prove a waiver, then, manifestly, without the modification the instruction was vicious and calculated to mislead the jury to the plaintiffs' prejudice. Two other instructions were asked on behalf of the defendant, substantially to the same effect as the first, and they were refused, and we think properly, both because, as presented, they did not state the law applicable to the issues in the case, and because the first instruction, given with the modification, covered the same questions.

We find no reversible error in this record, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*