Weaver, J.
The facts in the case are substantially without dispute. The defendant is a fraternal life association, doing business in this State, and upon certain specified *515 conditions and considerations, insures the life of each of its members in a sum not exceeding $2,000, payable upon his decease to a designated beneficiary. The membership of the association is organized into local societies, or lodges, under the general headship or government of a Grand Lodge, having jurisdiction of the order within the State. The fund from which benefit certificates are paid is accumulated by assessments made by the Grand Lodge not oftener than one each month. The by-laws of the association provide that notice of each assessment shall be sent out to the membership on the 1st of the month for which it is called, and that any member failing to pay the same on or before the 28th day of each month shall be held to be delinquent. Each local lodge has an officer known as the “ financial secretary,”whose duty it is to collect the assessments. The laws of the association are not fully disclosed in the record, but we draw the inference from what is shown that, in the regular order of business, it is made the duty of the financial secretary on the 28th day of each month to pay over the assessments collected by him to the local treasurer, who transmits the same to the proper officer of the Grand Lodge. It is also provided that any member of a lodge “ in arrears in the payment of assessments or dues on the 28th day of the month upon which the same has been called, shall, from that date, stand suspended from all rights and benefits under his or her certificate of membership, and it shall be the duty of the financial secretary to mark such members suspended upon his or her book from that date, without action of the lodge, and such member so in arrears shall remain suspended until he or she shall lawfully be reinstated.” It is further provided that any member who has become thus delinquent may renew his certificate at any time within three months thereafter upon payment of all arrears and furnishing a proper certificate of health, if such certificate be required of him. After a suspension of three months, the delinquent desiring reinstatement is required to submit to a new medical exam *516 ination. Another section provides that any member in ar: rears for the period of six months shall stand suspended from all benefits and privileges in the society and that his or -her certificate shall be reported to the Grand Secretary as annulled, and the member shall not be again admitted “ except as provided in this article.” Immediately following this provision, it is enacted that “ any member suspended by reason of nonpayment of dues or arrearages or beneficiary assessments applying to be reinstated shall pay the amount he or she was in arrears at the date of the suspension, and all other arrearages and in addition thereto a sum not less than $5.” By still another section, it is provided that any member “ neglecting to pay and in arrears to the lodge to the amount of three months’ dues or more . . . shall stand suspended from all benefits and privileges until the payment of all arrearages up to the time of reinstatement,” in accordance with the rules. Upon admission to the lodge each member is required to pay one advance assessment. It is made the duty of the financial secretary to keep a correct account between the lodge and its members, receive all moneys for the lodge, pay the same over to the local treasurer, taking vouchers therefor, and report the same to the recording secretary. He is also required to notify all members in arrears to the amount of three months’ dues, and notify the local president of the fact. By section 5, art. 9, of the laws of the association, it is made the duty of the financial secretary on the 28th day of the month to “ mark and report to the recording secretary the names of the members who are in arrears on such assessments, and the recording secretary shall place the same on the records of the lodge, and mark such certificates suspended on the certificate register book, affixing the date thereto. The financial secretary shall, upon receipt of any arrearages from the assessments, pay the same into the treasury (said amount from arrearages to be forwarded to the Grand Secretary upon the first order thereafter) and notify the recording secretary of the same, *517 and tlie recording secretary shall so place it on the records of the lodge, and mark the certificate so paid ‘ renewed' on the certificate register book affixing the date thereto.”
The foregoing requirements of the association are all which the record before us contains, bearing upon the questions raised by the appeal. It appears that a local lodge of the association was organized at Shenandoah, in Page county, Iowa, on October 27, 1880, and the deceased George E. Trotter became a charter member. Eor some time prior to the death of said Trotter, this lodge had been reduced to six members, four of whom, it is alleged had removed from said town, leaving but two to transact the business of the lodge. Of these two the deceased acted as president of the lodge, and W. P. Eerguson as its financial secretary. There was, and for some years had been, no recording secretary or treasurer or other officer of such lodge except the president and financial secretary above named. In this situation it had been the custom, if not the duty, of the financial secretary to collect the assessments as they were made from time to time upon the membership of the lodge, and remit them direct to the Grand Secretary. This remittance was required to be made not later than the 15th of the month following the maturity of an assessment. Mr. Eerguson, the financial secretary of the lodge for a period of ten years prior to the death of Trotter, is a practicing lawyer and frequently away from home on the 28th of the month, and very frequently the assessments upon the deceased and other members were not paid until after the date, when, according to the letter of the by-laws, they were in arrears. But in all cases they were paid in time to be forwarded to the Grand Lodge within the time allowed for such remittance. The fact that these payments were frequently made after the 28th of the month was shown upon the books kept by the financial secretary. In no instance of such delinquency was the-member treated as suspended, or as having forfeited his rights in the association, and no mark or entry of any suspension on account *518 of such delinquency or of restoration or reinstatement to membership was ever entered- upon any of the books or records of the lodge.
The deceased was in the mercantile business in Shenandoah, and it was the habit of the finaneiál secretary to call at his store on or about the time he wished to make remittance to the Grand Secretary and receive payment of the assessment from the deceased, or from his partner or clerk. All assessments upon the deceased prior to June, 1904, were paid and remitted. On the morning of June 27, 1904, Mr. Ferguson left Shenandoah and went to St. Louis, Mo., where he remained until July 5, 1904. During his absence there was no one left in charge of his business who was authorized to receive or receipt for the assessments due from the lodge members. On the morning of July 6, 1904, Trotter, who had been in good health up to that time, died without having paid the assessment which became due on June 28th. On the following day the plaintiff, or the partner of the deceased, paid the amount of the June assessment to the financial secretary, who included the same in his report and remittance to the Grand Secretary. Formal proofs of the death of Trotter were furnished the Grand Lodge on July 13, 1904, but were not approved because the financial secretary had failed to sign and swear to a so-called “ supplementary affidavit,” which had been called for, stating in effect that the June assessment had been paid on or prior to June 28, 1904. The Grand Secretary again called for said affidavit from the financial secretary, who declined to make it, and, on October 8, 1904, the amount of the assessment, which had been remitted on July 7, 1904, as aforesaid, was returned by the Grand Lodge to the financial secretary who tendered its return to plaintiff, but the same was refused.
1. Beneficial insurance: payment of deliquent assessment waiver. I. As we understand the record, and the arguments presented, it is the theory of the appellee, and was the theory on which the trial court preceeded, that, upon the failure of the deceased to pay the June assessment on the *519 28th day of that month, he was by the automatic operation of the laws of the association at once suspended from membership therein, and his certificate became forfeited; and that this result is in no manner avoided by any practice, custom, or habit, which may have prevailed between him and the local lodge or its officers, as to the time when or the manner in which the assessments had been collected during the previous history of the lodge. We are not prepared to go to that length. What was the legal relation in which the financial secretary stood to the parties? Upon the answer to this inquiry depend very largely the force and effect of the conceded facts in the case. If he was simply the agent of the member paying the assessments, then, of course, the dealings between him and his principal could have no effect to avoid a forfeiture of the member’s certificate for a neglect to observe the conditions on which it was issued; but, if he was the agent of the Grand Lodge, his habitual practice as to the time and manner of collecting the assessments may operate as a waiver or estoppel to prevent insistence upon such a forfeiture after a loss has occurred. It must be borne in mind that no matter how stringent the condition upon which the continued validity of the contract of insurance is made to depend, the company or association is under no obligation to enforce it. If, then, such company or association itself or by its agent (and it can act only by agents) adopts a method of business by which premiums or assessment are habitually collected and received for a period of several days after they become delinquent according to the strict letter of the contract, and no forfeiture or suspension is declared thereon, but such members are recognized as being at all times in good standing, and by this course of business members have reason fairly to conclude that the insurer does not insist upon literal compliance with the terms of the contract in this respect; then it will not be heard to deny the good standing of a member who has de *520 pended upon the custom observed by the agent, and has paid or offered to pay his assessments in accordance therewith. Cline v. Sovereign Camp (Mo. App.), 86 S. W. 501, and cases there cited; Mayer v. Mutual, 38 Iowa, 304; Loughridge v. Association, 84 Iowa, 146; Reisz v. Supreme Council, 103 Wis. 429 (79 N. W. 430); Sweetser v. Mutual Aid, 117 Ind. 97 (19 N. E. 722); Grand Lodge v. Lachman, 199 Ill. 140 (64 N. E. 1022); Woodmen v. Tevis, 111 Fed. 113 (49 C. C. A. 256); Supreme Lodge v. Withers, 177 U. S. 260 (20 Sup. Ct. 611, 44 L. Ed. 762); Gunther v. Association, 40 La. 776 (5 South. 65, 2 L. R. A. 118, 8 Am. St. Rep. 554); Masonic Mutual v. Gibson, 52 Ga. 640; Insurance Co. v. Lester, 62 Ga. 247 (35 Am. Rep. 122); Appleton v. Insurance Co., 59 N. H. 541 (47 Am. Rep. 220); Insurance Co. v. Eggleston, 96 U. S. 572 (24 L. Ed. 841); Home Protection v. Avery, 85 Ala. 348 (5 South. 143, 7 Am. St. Rep. 54); Accident Co. v. Van Etten, 40 Ill. App. 232; Mueller v. Order of Druids, 69 Minn. 236 (72 N. W. 48); De Frece v. Insurance Co., 136 N. Y. 144 (32 N. E. 556); Spoeri v. Insurance Co. (C. C.) (39 Fed. 752); James v. Mutual Reserve, 148 Mo. 1 (49 S. W. 978); Richwine v. Mutual Reserve, 76 Minn. 417 (79 N. W. 504); Supreme Council v. Winter, 108 Ky. 141 (55 S. W. 908); Benefit Association v. Jones, 8 Ky. Law Rep. 623; Tripp v. Insurance Co., 55 Vt. 100; Wallace v. Circle, 121 Mich. 263 (80 N. W. 6); Indemnity Society v. Griggs, 118 Ill. App. 577; Foresters v. Hollis, 70 Kan. 71 (78 Pac. 160); Woodman v. Colman, 68 Neb. 573 (94 N. W. 814); Sup. Lodge v. Sullivan, 26 Ind. App. 60 (59 N. E. 37); Association v. Powers, 65 Kan. 420 (73 Pac. 65).
2. Same: agency of local officers. There is no magic in the mere name of a thing, and if an act done or performed by one person or party for or in behalf of another is in its essential nature one °* aSency> then the former is the agent of the latter. This principle has been often enforced as between the insurer and insured, and the person *521 appointed or designated to receive payment of premiums and assessments beld to be the agent of the insurer, even where, by the terms of the contract, it is provided that he shall be regarded as the agent of the insured. Ancient Order v. Drake, 66 Kan. 538 (72 Pac. 239); Supreme Lodge v. Withers, 177 U. S. 260 (20 Sup. Ct. 611, 44 L. Ed. 762); Supreme Lodge v. Davis, 26 Colo. 252 (58 Pac. 595); Insurance Co. v. Pearce, 39 Kan. 396 (18 Pac. 291, 7 Am. St. Rep. 557); 3 Cooley’s Briefs, 2373.
As is well said by Mr. Justice Brown in'the Withers case, supra: “ The position of the secretary must be determined by his actual power and authority, and not by the name which the defendant chooses to give him. To invest him with the dqties of an agent and to deny his agency is a mere juggling with words. Defendant cannot play fast and loose with its own subordinates.” The question involved in that ease, as in this, turned largely upon the proposition whether the local secretary, in collecting assessments made by the Grand Lodge upon members of local lodges, was acting as the agent of the latter. This question the court answered in the affirmative, in a very vigorous opinion, which cites many of the cases, and takes note of the tendency of' the courts, generally, to discountenance forfeitures of insurance on merely technical grounds, and to hold such forfeiture waived where the insurer, or its agent, by a course of business or conduct, has given the insured reasonable ground to believe that strict observance of the time and manner of paying recurring installments, as required by the letter of the contract, will not be insisted upon. The authorities are substantially unanimous that in schemes of co-operative life insurance in which the authority to issue benefit certificates, prescribe terms of membership, and levy assessments is vested in a grand or supreme lodge, or council, or other central governing body which central body exercises jurisdiction over local lodges or societies through which the membership is recruited, and by the officers of which assessments are *522 collected and remitted, the local organization and its officers to whom the duty of making such collections is committed are to be considered the agents of the governing body. Bragaw v. Supreme Lodge, 128 N. C. 354 (38 S. E. 905, 54 L. R. A. 602); Association v. Powers, 67 Kan. 420 (73 Pac. 65); Whiteside v. Conclave (C. C.), 82 Fed. 275; Schunck v. Fond, 44 Wis. 369; Bacon’s Ben. Soc. (3d Ed.) section 148; Brown v. Supreme Court I. O. O. F., 176 N. Y. 132 (68 N. E. 145).
That this agency is subject to the operation of the ordinary rules.applicable“to agencies of the same general character in the business of ordinary life insurance is also well settled. Association v. Tucker, 157 Ill. 194 (42 N. E. 398, 44 N. E. 286); McCorkle v. Association, 71 Tex. 152 (8 S. W. 516). As to the effect of the act of the collection agent in extending the time of payment of assessments and premiums, especially where such indulgence is so frequent or so often repeated that the member may reasonably rely thereon, there are numerous decisions, and with very few exceptions they sustain the contention of the appellant. Without any attempt at an exhaustive citation we may note the following:
An officer of a subordinate lodge charged with the duty of collecting and forwarding assessments is an agent of the Supreme Lodge v. Supreme Lodge v. Davis, 26 Colo. 252 (58 Pac. 595).
In Wallace v. Mystic Circle, 121 Mich. 263 (80 N. W. 6), the deceased and other members had frequently failed to pay their assessments promptly on the prescribed day, and on some occasions the payments were not made until they were several weeks past due. An assessment which became due July 18th, was not paid, and a member so in default, died August 11th. In an action upon his certificate; plaintiff asked the court to instruct the jury that, if payment of assessments had been frequently allowed to be made after due, and the officers of the local lodge had by their course in con *523 ducting business caused the deceased to believe that strict performance on his part would not be exacted, then a forfeiture could not be insisted upon because of -the nonpayment of the last assessment and plaintiff would be entitled to recover. This request was refused and the jury was instructed according to the contention of the appellee herein, that failure to pay on or before the day fixed by the contract operated to work the suspension of the déceased without any declaration or affirmative action to that effect on part of the lodge, and that deceased was bound to know the laws and rules of the society and must be held to have understood that his failure to pay served to relieve the society from all obligation upon his certificate. On appeal it was held that the charge given was erroneous, and that the jury should have been instructed as requested by the plaintiff. This doctrine was approved and applied in Johanson v. Grand Lodge, (Utah) 86 Pac. 494. It was also approved by the court, in Loughridge v. Association, 84 Iowa, 141. We there say: “ Nor can it be doubted that a general practice and course of business which would lead the plaintiff to rely upon the acceptance of payment for assessments after failure to pay in the time prescribed by the policy will operate as a waiver of the forfeiture. Insurance companies cannot lead customers to rely upon their usages, course of business, and the declarations of their officers which disarm vigilance, overcome watchfulness, and remove stimulus to promptness in payments provided by their policies, and then rigidly enforce the conditions of payment.” See, also, Walsh v. Insurance Co., 30 Iowa, 133.
In the case of Mayer v. Insurance Co., 38 Iowa, 304, we held that an agent’s custom of sending out written notices, or reminders to policyholders, calling attention to the date when their premiums would be due, operated as a waiver of the right to forfeit a policy where the notice was omitted, and the insured thereby led to omit prompt payment. In the same case we approved an instruction to the jury to the *524 effect that, if the agent had been in the habit of receiving payment of premiums after they were due, or if the agent had informed the insured that he would call at the latter’s place of business and collect the premium, and had in fact pursued that practice in the past, these circumstances “ would excuse the deceased from going to the agent’s office and paying such premium the day it was due.” In upholding this instruction the opinion says: “ The vast increase in the insurance business, and the many interests which it involves have demonstrated that many of the decisions heretofore made respecting it are unwise, and have created a necessity for innovation. Every law should be reasonable, and it is reasonable only when it is adapted to human conduct. . . . Now, it must strike every reasonable mind that a majority of ordinarily prudent persons, who had been customarily notified of the time when their premiums upon their policies became due had received no notice of an intention to abandon the customary course, would, in a particular case, expect and await like notice. And if such is the reasonable and natural result of the previous dealings of the company, it must govern its future conduct, so as to accord with the reasonable expectation thus created.” See, also, Warnebold v. Grand Lodge, 83 Iowa, 26, 2d par.
In the recent case of Alexander v. Grand Lodge, 119 Iowa, 519, we again had occasion to consider the effect of the act of the financier of a local lodge upon the governing body of the association. There the policy or certificate had been, issued under circumstances which made it subject to be avoided for fraud on part of the insured. Thereafter, with knowledge of the fraud, the financier of the local lodge advised the beneficiary to continue paying the assessments and keep the certificate alive, and this was done. This we held to operate as a waiver of the defense, saying: “ One asserting the right to pay under a valid certificate, and allowed to do so by the officer having to determine whether or not such payments should be received, is certainly justified in relying *525 on tlie statements of such officer, and the association is es* topped from insisting by way of defense on any fact which would have been a proper ground for refusing when the dues were offered to recognize the certificate as valid; provided, such fact is known to the association through such officer, or there is such notice of the fact as to charge the association or its officer with knowledge thereof.”
Under circumstances very similar to those in the case at bar, and upon a contract practically identical with the one here sued upon, the Wisconsin court has held that, where the local officer collecting assessments has been in the habit of receiving them after they were due, thereby leading the insured to believe that no forfeiture would be claimed if payments were made within a few days after maturity, the right to insist upon such forfeiture is waived, and where, under such circumstances, a member failing to pay an assessment due July 1st, died on July 10th, and on the same day a member of his family paid such assessment (a return of which was promptly tendered), there was no forfeiture, and a recovery upon the certificate was upheld. Reisz v. Legion of Honor, 103 Wis. 427 (79 N. W. 430). The same rule is applied in Mueller v. Grand Grove, 69 Minn. 236 (72 N. W. 48).
In Illinois, it' has been repeatedly held that in organizations of this class the local lodge and its officers are agents of the Grand Lodge, and the latter is bound by notice to, or knowledge of, the latter. Coverdale v. Royal Arcanum, 193 Ill. 91 (61 N. E. 918);.High Court v. Schweitzer, 171 Ill. 325 (49 N. E. 506); Grand Lodge v. Lachmann, 199 Ill. 140 (64 N. E. 1022); Insurance Co. v. Koehler, 168 Ill. 293 (48 N. E. 297). Likewise in Indiana. Supreme Tent v. Volkert, 25 Ind. App. 627 (57 N. E. 203); Supreme Tribe v. Hall, 224 Ind. App. 316 (56 N. E. 780, 79 Am. St. Rep. 262); Sweetser v. Association, 117 Ind. 97 (19 N. E. 722). And in Michigan. Wagner v. Knights, 128 Mich. 667 (87 N. W. 903). See, also, Stylow v. Insurance Co., 69 Wis. *526 224 (34 N. W. 151, 2 Am. St. Rep. 738); Insurance Co. v. Eggleston, 95 U. S. 572 (21 L. Ed. 841); Knights of Pythias v. Bridges, 15 Tex. Civ. App. 196 (39 S. W. 333); Sup. Lodge v. Kalinski, 163 U. S. 289 (16 Sup. Ct. 1047, 41 L. Ed. 163).
3 Waiver: estoppel. Under this rule thus well established, and the undisputed facts in the case, we are clearly of the opinion that the association should not be permitted to insist upon a forfeiture of the contract. It is a universally recognized doctrine that forfeitures are not
favored in law, and that the courts will be vigilant and quick to discover, and give effect to any act or circumstance from which it may fairly be argued that the insurer has waived the right to strict and literal performance of the insured, or upon which an estoppel against such defense may be founded. Appleton v. Ins. Co., 59 N. H. 541 (47 Am. Rep. 220). Counsel seem to argue that while waiver or estoppel may exist in a matter of ordinary insurance, a rulé less favorable to the insured obtains in fraternal or lodge insurance. An occasional case may be found in which this doctrine seems to find support. Supreme Lodge v. Oeters, 95 Va. 610 (29 S. E. 322); Busby v. Ins. Co., 10 Md. 572 (17 Am. Rep. 634). But, as we have seen, it is contrary to the general trend and the great weight of the authorities, as, we think, it is also opposed to the principles of common right and justice. In addition to cases cited, see Helme v. Insurance Co., 61 Pa. 107 (100 Am. Dec. 621); Girard v. Insurance Co., 86 Pa. 236; Baxter v. Insurance Co., 13 Allen (Mass.) 323. Indeed if there is to be any difference in the degree of strictness with which the insured shall be held to pay premiums, and assessments promptly on time, it would be in favor of members of fraternal and co-operative associations like the appellee. Murphy v. Independent Order, 77 Miss. 830 (27 South. 624, 50 L. R. A. 111); Woodmen v. Coleman (Neb.) (94 N. W. 814).
These societies are, as a rule, organized in an informal *527 way. Their constitutions, rules, and by-laws, as is well illustrated in those on the record before us, are often crude, obscure, and confused, if not contradictory in their terms. The officers and members of each loca-l lodge are neighbors, acquaintances, and personal friends, ordinarily without experience in the insurance business, and rarely, if ever, insisting upon strict technical compliance with all the written regulations by which they are supposed to be guided. The officer collecting the assessments generally knows the financial standing of the members on his list, and their desire with reference to a continuance in such membership, and as he is generally given a period of grace in which to make remittance to the Grand Lodge (in this case at least two weeks) he very naturally continues to receive payments, until such remittance is made, even though they be past due according to the letter of the rules. Indeed, it may often occur, as it sometimes did in this case, that delinquency and suspension of a member are prevented by the act of the collector in advancing the amount due, and thereafter being reimbursed by such member. It is incredible that such lenient tendencies and practices should not be well' understood by the Grand Lodge. Indeed the very fact that liberal time is given to the collector to make his remittance is strongly suggestive of the conclusion that an opportunity is thus afforded for the very purpose of enabling him to round up the delinquents and prevent wholesale suspensions from membership. If the doctrine contended for by the appellee is to be upheld, then the deceased, who had been recognized as a member of the association in good standing for nearly 25 years, and had from time to time paid the assessments made upon him in the belief that he held a valid and enforceable certificate, had as a matter of law been under the cloud of suspension for years without suspecting it, and his certificate was all the time of no more value than a piece of blank paper; for it is shown that during all this time he frequently did not pay until called upon after payment was due. *528 To so hold is to set a trap for the feet of the unwary member; it is to receive his money without furnishing him any consideration therefor, and to enable the insurer to escape liability on its contract for no better reason than that it has itself misled the insured to his injury by its own course of business. It is not too much to say that technical defenses to actions upon insurance policies are not regarded with favor by the courts (Supreme Lodge v. Withers, supra), and that the professedly benevolent and charitable character of the so-called fraternal insurance societies is not regarded as exempting them from the application of this rule. Speaking of a claim for such exceptional consideration the Supreme Court of Nebraska has well said: “ This consideration would appeal to us with greater force,- if these principles of mutuality and benevolence more frequently survived the holders of .certificates, and were more uniformly regarded by the associations as being applicable to and as including the persons named as beneficiaries. A charitable organization which collects its funds with avidity, but is astute in finding excuses for not bestowing them upon the designated objects of its bounty, is not entitled to any exclusive or special consideration at the hands of the court.” Woodman v. Coleman, 68 Neb. 573, (94 N. W. 814.)
II. The conclusions arrived at in the preceding paragraph being decisive of the appeal, we shall not attempt any extended discussion of other issues presented. With reference, however, to the claim of waiver because of the absence from home of the financial secretary at the time when the assessment became delinquent, according to the rules of the association, we will say there is good authority for the proposition that under such circumstances the member is entitled to a reasonable time after the return of such officer or agent, in which to make the payment. See Insurance Co. v. Lester, and note thereto in 35 Am. Rep. 122. Also Sovereign Camp v. Hides (Tex. Civ. App.), 84 S. W. 425.
*529 4, Forfeiture: waiver. *528 On the general subject of waiver, we may also note *529 that, according to onr decisions, tht question whether waiver will be found in any particular case depends, not upon the intention of the party against. whom it is asserted, but on the effect which his conduct or course of business has had upon the other party. Tobin v. Mutual Aid, 72 Iowa, 264; Bailey v. Mutual Benefit, 71 Iowa, 689; Moore v. Conductors, 90 Iowa, 727. And this rule has been held applicable even where the insurer acts under a mistake. See Bailey case, supra.
5. Advance assessments: application. It is to be noted, also, that this is a ease in which an advance assessment is exacted of a member prior to his initiation, and we must presume that the deceased complied with the condition imposed upon his admission to membership. No claim is made that deceased failed to pay any of the subsequent assessments, except the one made for June, 1905. Since this litigation was begun, we have decided that until the advance payment thus exacted has been duly applied upon some assessment, the member cannot be held to be in arrears (Rambousek v. Mystic Toilers, 133 Iowa, —; Sleight v. Mystic Toilers, 133 Iowa, —; Arrison v. Mystic Toilers, 129 Iowa, 303; Hetzel v. Knights, 129 Iowa, 655, and under the rule of these cases there would seem- to be no ground for holding the deceased to have been suspended or subject to suspension at the date of his death.
A partial defense was pleaded by the appellee to the effect that, by an amendment to the laws of the association, a lien had been imposed upon the certificate, which would reduce the amount recoverable thereon to $1,415.50. This issue does not appear to have been considered by the trial court, nor has it been argued by counsel, and we do not attempt to pass upon it.
For the reasons stated, the judgment of the district court is reversed, and cause remanded for further proceedings in harmony with this -opinion.— Reversed.