Statement.

## Richmond.

## SUPREME LODGE KNIGHTS OF HONOR V. OETERS.

### FEBRUARY 10, 1898.

Absent, Cardwell, J.

1. BENEFIT SOCIETIES—*Case at Bar.*—Upon the evidence in the case at bar it appears that a member of a benefit society was duly suspended at the time of his death for non-payment of assessments, and there can therefore be no recovery on the certificate on his life which was payable only on condition of his being in good standing at the time of his death.

2. BENEFIT SOCIETIES—*Forfeiture—Waiver—Notice.*—The forfeiture of a certificate in a benefit society is not waived by the fact that the financial reporter of a subordinate lodge is in the habit of receiving payment of assessments after the end of the month for which they are levied, and within which they are payable, under the penalty of suspension and a forfeiture of the benefit certificate, when there is no evidence that the Supreme Lodge, which is sued on the certificate, is aware of such habit.

3. BENEFIT SOCIETIES—*Payment of Assessments—Forfeiture—Waiver.*— Where the arrears for which a member of a benefit society stands suspended, and his benefit certificate forfeited, have not been paid at the time of his death, no waiver of the forfeiture can be implied from the fact that the local treasurer had previously been in the habit of receiving payment of such arrears after the dates at which they were payable

Error to a judgment of the Law and Equity Court of the city of Richmond, rendered May 30, 1896, in an action of *assumpsit*, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*W. R. Spooner* and *D. C. Richardson*, for the plaintiff in error.

*Beverly T. Crump*, for the defendant in error.

RIELY, J., delivered the opinion of the court.

This was an action by Diedrick Oeters against the Supreme Lodge Knights of Honor, a corporation created under the laws of the State of Missouri, to recover the sum of $2,000, the amount of a certificate issued by it on February 10, 1881, to Martin Oeters and payable at his death to his brother, Diedrick Oeters, "upon condition that Martin Oeters comply with the laws, rules, and regulations now governing this order, and that may hereafter be enacted for its government, and is in good standing at the time of his death."

There was a verdict in favor of the plaintiff, and a motion by the defendant for a new trial upon the ground that the verdict was contrary to the law and the evidence. The court overruled the motion, and entered judgment upon the verdict. The defendant excepted, and on its motion the facts proved were certified by the court.

The writ of error brings under review the ruling of the court in refusing to set aside the verdict and award a new trial.

The defence made to the action was that Martin Oeters was not in good standing at the time of his death, but stood suspended for the non-payment of assessments.

Members of a subordinate lodge of the Knights of Honor are required by the constitution of the order to pay certain assessments levied by the Supreme Lodge, which go into its treasury to pay death benefits, or mortuary claims.

They are also required to pay certain dues, which go into the treasury of the subordinate lodge to pay sick benefits, and current expenses.

The assessments levied by the Supreme Lodge are payable by

each member of a subordinate lodge on or before the last day of the month for which they are levied; and, if not so paid, it is prescribed by the constitution of the order that the defaulting member shall stand suspended.

The dues to a subordinate lodge are payable on or before the last day of the months of March, June, September, and December; and any member, who is in arrears for dues for more than three months, shall stand suspended, unless otherwise ordered by his lodge.

A suspended member can only be re-instated by making application in writing, by himself or his agent, to his lodge at a stated meeting thereof, and by forwarding with his application "the amount he is in arrears for dues, fines, and all assessments made during his suspension, including the assessment or assessments on which he was suspended"; and he cannot then be re-instated without a ballot being taken by his lodge, and a majority of the votes cast being in favor of his re-instatement.

It appears from the certificate of facts that Martin Oeters failed to pay, on or before the last day of December, 1894, the assessments levied against him for that month. Therefore, by force of the constitution of the order, he stood suspended on January 1, 1895, and it was so reported to the Supreme Lodge by the financial reporter of his lodge.

No written application for re-instatement was signed by Martin Oeters, or by any one as his agent; and no application for his re-instatement was presented to or acted upon by his lodge in the month of January, 1895, or thereafter. He died on February 2, 1895. So that he was not "in good standing" at the time of his death, which was the condition of the right to claim the money for which the certificate was issued.

It was contended, however, that, by reason of the payments he had made to the financial reporter of his lodge, sufficient funds were received to cover assessments levied for the month of December, 1894, and also for the month of January, 1895, and that he therefore stood improperly suspended at the time of his death.

The assessments, dues, and payments, from August, 1894, to his death, are given in the certificate of facts. It appears, by reference thereto, that there were two assessments of one dollar each for the month of December, 1894, which were payable on or before the last day of that month. The dues to his lodge, amounting to one dollar and a half, were also payable on the last day of that month. The assessments and dues payable in December thus aggregated three dollars and a half. He failed to pay any of the said moneys on or before the last day of December, and therefore necessarily stood suspended on January 1, 1895.

There were also three assessments of one dollar each for the month of January, 1895, which were payable on or before the last day of that month.

Pursuant to an arrangement made by Martin Oeters with the financial reporter, he was in the habit of leaving the money to pay his assessments and dues at the store of one Collins, and on January 9, 1895, he left there the sum of three dollars and twenty-five cents, which was received by the financial reporter on January 23, 1895. This was all the money that was paid by Martin Oeters between December, 1894, and his death. It was insufficient to pay the assessments and dues which were payable by him in the month of December, much less also the additional assessments for the month of January, 1895, and refutes the contention that sufficient funds went into the defendant association to cover the assessments and dues payable in those two months. Nor is a different result reached, if the assessments, dues, and payments are examined back to August, 1894, or even for a much longer period.

Not only was the amount paid in January, 1895, insufficient to discharge the assessments and dues payable in December, 1894, but when received by the financial reporter, it was too late for an application to be made for the re-instatement of Martin Oeters in the month of January, 1895, the last stated meeting for that month having taken place the day before the financial

reporter received the money, and he died before the next meeting would take place in February.

He could not be re-instated without the payment of the assessments for December, 1894, for which he was suspended, and also the assessments levied for the month of January, 1895; and not then without a ballot by his lodge, and a majority of the votes cast being in favor of his re-instatement. The moneys were not paid; no application for re-instatement was made; and consequently no ballot was taken with respect to his re-instatement. It thus plainly appears that under the constitution of the Supreme Lodge he stood duly suspended at the time of his death for the non-payment of assessments.

It was further contended, however, that it having been the habit of the financial reporter to receive payment of assessments after the end of the month for which they were levied, and within which they were payable, under the penalty of suspension and a forfeiture of the benefit certificate, this habit constituted a waiver of the right of the defendant corporation to exact a strict compliance with the laws respecting the payment of assessments, and estopped it from insisting upon a forfeiture of the benefit certificate. There is nothing in the certificate of facts for the inference, even, that it was aware of this habit of the financial reporter.

It is expressly declared in the constitution of the Supreme Lodge Knights of Honor that reporters, financial reporters, and treasurers of subordinate lodges, in giving notice of assessments, and in collecting and forwarding assessments to the supreme treasurer, shall be agents for the members of their lodges, and shall not be agents of the Supreme Lodge. These officers are annually elected by the members of the subordinate lodge; and the Supreme Lodge has nothing to do with their selection. Whether these officers, with respect to the matters specified, are the agents of the members, or, in despite of the constitutional provision, are, in fact, agents of the Supreme Lodge, and such agents as are capable of waiving for it a right of forfeiture,

there is no need in this case to decide, for there is nothing in the certificate of facts upon which to found a claim of waiver or estoppel.

No implied waiver could arise from the conduct of the financial reporter without the receipt by him of the assessments for which the member was in default. The amount paid by Martin Oeters on January 9, 1895, was insufficient, as has been seen, to cover the assessments and dues which he should have paid in December, 1894, and nothing whatever was paid by him on the assessments for the month of January, 1895, either within that month or thereafter, which constituted an additional ground of suspension.

The defendant corporation belongs to that class of organizations known as benefit societies. They are not organized for the purpose of making money, but for fraternal and benevolent objects. Their schemes of benevolence, by which they aim to provide benefits for their members in time of sickness, and indemnity to their families upon their death, cannot be maintained, unless the rules and regulations prescribed by their Constitution and By-laws for the attainment of these objects are substantially upheld. This it should be the policy of the law and the aim of the courts to do. Otherwise, their schemes for furnishing to the working classes and men of moderate incomes a cheap and simple substitute for life insurance cannot be accomplished.

We are of opinion that the facts certified are wholly insufficient to sustain the verdict, and that the court below erred in overruling the motion of the plaintiff in error to set aside the verdict, and grant it a new trial. Its judgment must, therefore, be reversed, the verdict set aside, and a new trial awarded.

*Reversed.*