JAMES M. ELDER v. GRAND LODGE OF ANCIENT ORDER OF
UNITED WORKMEN.

May 22, 1900.

Nos. 12,117—(127).

### Benefit Insurance—Payment of Assessments—Waiver.

J. R. E. held a certificate of insurance in defendant association, and was a member of one of its subordinate lodges. The by-laws of the order, which are a part of the contract of insurance, require assessments against members to be paid on or before the 28th day of the month in which made, in default of which the member becomes suspended without action on the part of the lodge. *Held*, that the custom or habit of the collecting or receiving officer of such subordinate lodge in permitting the insured to pay assessments after default, between said 28th of the month and the lodge meeting next following, is not binding on defendant, it not appearing that the subordinate lodge had any notice or knowledge of such custom or habit, and it not appearing that such collecting officer had any authority to waive a strict compliance with the by-laws in that respect.

### Same—Custom of Subordinate Lodge.

During the time of his membership in said association—four years—a large number of other members of the subordinate lodge of which he was so a member were suspended, in accordance with the by-laws, for non-payment of assessments made against them. *Held*, that the custom and habit of such subordinate lodge in restoring and reinstating such suspended members, the reinstatements being made under and pursuant to its by-laws, did not constitute a waiver of the prompt payment of future assessments, nor establish a right of restoration to membership.

### Compliance with Contract not a Waiver.

A compliance with the terms and conditions of a contract of insurance

on the part of the insurer cannot be construed as a waiver of the terms of the contract thus complied with.

Action in the district court for Crow Wing county to recover $2,000 on a certificate of insurance. The case was tried before Holland, J., who found in favor of plaintiff. From a judgment entered pursuant to the findings, defendant appealed. Reversed.

*E. & W. N. Southworth* and *Chas. G. Hinds,* for appellant.

*S. F. Alderman* and *W. S. McClenahan,* for respondent.

BROWN, J.

This is an action to recover upon a certificate of insurance issued by defendant on the life of plaintiff's brother, plaintiff being the beneficiary named therein. The cause was tried below before the court without a jury, and judgment was awarded to plaintiff, from which defendant appeals.

The facts in the case are as follows: The Ancient Order of United Workmen is a benevolent, charitable, and fraternal insurance association. It is composed and made up of three different, though not wholly independent, organizations: (1) A supreme lodge, having a general supervision and jurisdiction over the whole order; (2) a state grand lodge, deriving authority from the higher order; and (3) a subordinate lodge or lodges chartered and constituted by the grand lodge, and located at different points in the state. The grand lodge, defendant in this case, is the general contracting and responsible body of the order. No contract of insurance is valid unless approved by its officers. All certificates of membership are issued by it, all assessments upon the members are made by it, and it is alone responsible for the payment of all death losses. The subordinate lodges have primary authority to admit applicants to membership, subject to regulations imposed by and to the approval of the grand lodge. They have a general charge and supervision of the matter of collecting and receiving assessments duly levied upon the members, making due report thereof to the grand lodge. They have also authority, under certain conditions and restrictions, to restore and reinstate suspended members.

The deceased, J. R. Elder, duly became a member of a subordinate lodge of such order, and received a certificate of such member-

ship in due form, which certificate contained, among other things, the following condition, namely:

"This certificate is issued upon the express condition that said J. R. Elder shall in every particular comply with all the laws, rules, and requirements of said order."

Similar certificates are issued to all members. Payment of such certificates in case of the death of the insured, is made from a "beneficiary fund" controlled and maintained by the grand lodge. This fund is made up of assessments of one dollar upon each certificate holder of the association for every death of a member. All such assessments are made on the first of the month, and are payable on or before the 28th of the month in which so made. A failure to pay any such assessment within such time operates to suspend the member so in default, without any act or declaration on the part of the subordinate lodge. Deceased became a member of such society in 1892, and continued such until the time of his death on November 24, 1896, unless such membership ceased and ended upon his default and failure to pay an assessment made against him on August 1 preceding. An assessment was then duly made, but was never paid by deceased, or by any one for him.

The contention on the part of the defendant is—and this embodies its whole defense to the action—that by his failure to pay such assessment Elder became suspended by force and operation of the by-laws of the order, and all rights under the certificate were thereby forfeited. The by-law on this subject, which is a part of the contract of insurance, and which deceased, by the condition of his certificate aforesaid, agreed to comply with, is as follows:

"Any member who fails to pay all such assessments on or before the 28th day of the month in which the assessment is made, shall, by such nonpayment alone, stand suspended, without any action by the lodge, or any officer thereof; and the beneficiary of any such member under his certificate shall thereafter have no claim whatever upon the beneficiary funds of the order, unless such member be reinstated as the laws of the order require."

Plaintiff concedes that the assessment of August 1 was duly and properly made, and that it was never paid, but contends that the conduct of defendant and the subordinate lodge of which deceased

was a member, with reference to the receipt and acceptance of assessments after they were past due, and its conduct in restoring and reinstating suspended members upon such payment being made, was such as to constitute a waiver of prompt payment, and to estop it from insisting upon the default. At the opening of the trial in the court below the parties entered into the following stipulation, viz.:

"If the conduct and dealing of the defendant prior to September 1, 1896, has been such as to waive prompt payment of assessments on the part of its members, and to authorize a delay upon their part, such as existed in this case, the defendant is liable; if there has not been such conduct and dealing on the part of the defendant with its members as to waive such prompt payment and authorize the delay which existed in this case in making payment of assessment number twelve, the defendant is not liable."

So we have for consideration the questions whether the conduct of the subordinate lodge, or its collecting or receiving officer, in the matter of receiving payment of past-due assessments in disregard of the by-laws, or the conduct and custom of such lodge in restoring and reinstating suspended members to all rights in the order upon payment of all assessments in arrear was such as to amount, in law, to a waiver of prompt and timely payment, and to estop it from insisting on a forfeiture. The court below found such waiver, and ordered judgment against defendant. There is no dispute as to the fact, and the question whether a waiver is shown is one of law, to be determined from all the evidence.

We find nothing in the evidence with reference to the conduct of the subordinate lodge, or its collecting officer, in receiving overdue assessments from deceased in disregard of the by-laws, to constitute or create such a waiver. It is the duty of the officer who receives payment of dues and assessments from members to report at the lodge meeting following the 28th of the month in which they are made all who are delinquent and in arrears, and the most that the evidence shows in this connection is that deceased was permitted by such officer to pay past-due assessments on several different occasions between the 28th of the month and the next following lodge meeting. But there is no evidence from which it can be found that the lodge, as a body, had any notice that the

by-laws were being thus disregarded, or any evidence that the conduct of such officer was in any way authorized, sanctioned, or ratified.   In all instances of such payments deceased was duly reported by such officer as having paid his assessments in due time, and in no instance was he reported as being in default.   The evidence does not show that the conduct of the officer ever came to the notice of his lodge, and it cannot be presumed that he had authority to disregard or waive the by-laws, and defendant is not bound by his acts in this regard.   Bryan v. National, 21 R. I. 149, 42 Atl. 513; Supreme Lodge v. Oeters, 95 Va. 610, 29 S. E. 322.   He had no other or greater authority under the by-laws than to receive payment of assessments, and to make report to the lodge of members who failed to pay.   On three different occasions deceased was reported as suspended for the nonpayment of assessments, but was subsequently reinstated by the lodge upon payment being made.

From a careful consideration of the evidence on this branch of the case, we conclude that the conduct of the officer or of the lodge itself in restoring deceased to membership in the three instances mentioned, cannot be construed as a waiver of prompt and timely payment of future assessments.   Counsel for respondent do not seriously contend that such conduct does amount to a waiver. Their main contention, and the principal ground upon which they seek to sustain the court below, is that the conduct and custom of the lodge in reinstating members generally who had been actually suspended for nonpayment of assessments was such as to constitute such a waiver.   Whether a waiver is so shown is the only remaining question in the case.

A waiver of the terms of a contract, so far as applicable to this case may be said to consist in the doing of some act which is inconsistent with an intention to insist on a strict performance, or a course of conduct inconsistent with and in disregard of the terms of the contract.   The evidence in this case shows that during the four years deceased was a member a large number of other members of the lodge to which he belonged were suspended for nonpayment of assessments at different times and dates, and that all of them, with one exception, were restored and reinstated upon payment of all arrearages.   It is urged by counsel for plaintiff that the conduct

and custom of the lodge in this respect continued as it was during all of such time, misled its members, and created the belief that prompt payment would not be insisted upon. We cannot concur in this contention. It was held in the case of Mueller v. Grand Grove U. A. O. D., 69 Minn. 236, 242, 72 N. W. 48, that if deceased

"Was permitted without objection to pay his dues at irregular intervals, this permission covering a period of more than three years, the subordinate grove accepting his money, without the slightest objection, when he got ready to pay it, there was a waiver of strict compliance with the various articles which required prompt payment. * *. * The defendant could not, after long-continued conduct of this nature, by which he was lulled into the conviction that this delay was unobjectionable and his good standing unaffected, suddenly, and without notice, insist upon the forfeiture, and that he was no longer in good standing, and had forfeited all rights and privileges." .

We have no intention of departing from this legal principle. It is sound, equitable, and just, but has no application to the facts in the case at bar. In that case there was, on the part of the subordinate grove, a deliberate disregard of the by-laws of the association, conduct inconsistent with an intention to enforce them. Overdue assessments were accepted from the insured without much regard to the length of time they were past due, in total disregard of the rules of the order, and without suggestion that he had been or was liable to be suspended.

In this case the evidence furnishes no intimation that the by-laws were ever ignored or disregarded by the subordinate lodge. On the contrary, it appears that they were always put into operation and effect. Members in default were reported by the proper officer as suspended, and they remained suspended until restored to membership by affirmative action of the lodge upon payment of past-due assessments. It is true that no formal application for such restoration was made by the suspended member, but it seems reasonably clear that the payment of the assessment to the proper officer was considered by the member as a sufficient application, and it was treated as such by the lodge. The Mueller case may be distinguished on other grounds, but it is unnecessary to continue the subject. The fact that there was a disregard of the rules and by-laws

of the order in that case, and a strict observance of them in this case, renders it inapplicable here.

The by-law above set out provides that all members became suspended upon a failure and default to make prompt payment of assessments. This suspension follows a nonpayment, without any action on the part of the lodge, and it continues until the member is restored in accordance with other by-laws. During such suspension the certificate of membership is of no force or validity, and all its rights thereunder are suspended also. The by-laws on the subject of reinstatements and restorations are as follows:

"Section 1. Any member suspended by reason of nonpayment of assessment may, if living, be reinstated at any time within three months from the date of such suspension upon the following conditions, and not otherwise, that is to say:

(1) The amount of all assessments for nonpayment of which the member became suspended, and also of all assessments that were made thereafter and up to the date of applying for reinstatement, shall be deposited with the financier of the lodge.

(2) The lodge shall, by a majority of those present and voting at a regular meeting thereof, determine whether or not such member shall be reinstated. * * * When all the foregoing conditions have been fully complied with, and not before, the member shall be held as reinstated, and his certificate again in full force."

Other provisions on this subject need not be referred to. The foregoing is sufficient to show the procedure essential to the restoration of a suspended member. The requirements and provisions of these laws were always followed, and in no instance were they disregarded. The delinquent members were uniformly suspended for their nonpayment of assessments, and subsequently reinstated upon application and payment of arrears. The mere payment of past-due assessments gave no right to restoration. Affirmative action on the part of the lodge was necessary to effect that result,—a majority vote of the members at a regular lodge meeting. The defendant had no control over the vote of the members. They were at liberty to vote as their discretion and inclination prompted them. Under such circumstances, and in the face of such an observance of the terms and provisions of the contract on the part of the defendant and the subordinate lodge, can it be held that the de-

fendant waived the terms of the contract thus complied with and obeyed? We think not. It is true that the lodge of which deceased was a member was quite liberal in the matter of restoring suspended members, but, as it uniformly followed and pursued its by-laws, the custom in that regard cannot give rise to a right to insist on other reinstatements. In other words, a compliance with the terms of a contract cannot be turned or converted into a waiver of the terms of the contract complied with. This precise point was involved and considered in the case of Crossman v. Massachusetts, 143 Mass. 435, 9 N. E. 753, and we quote from the opinion:

"The plaintiff further contends, that the superior court erred in the ruling that there was no evidence which would warrant the jury in finding that the defendant had waived the provisions of the contracts rendering them void upon failure to pay the assessment within thirty days. The evidence shows that the deceased was habitually unpunctual in paying his assessments, and that, in many instances, the defendant received the assessments after they were due, and reinstated him as a member of the association. * * * But there is no evidence to show that the defendant intended to waive the future prompt payment of assessments as one of the conditions of the contract, or that the deceased, as a reasonable man, was led to believe by its actions that it had waived this condition."
See also Easley v. Valley, 91 Va. 161, 21 S. E. 235.

So we conclude that the evidence falls as far short of showing a waiver in this respect as with respect to the conduct of the collecting officer in receiving payment of past-due assessments between the 28th of the month in which made and the lodge meeting following, and it follows that the findings of the court below are not justified by the evidence. We are not unmindful of the fact that the law abhors forfeitures, and that courts will, perhaps, enlarge and expand ordinary rules of application of evidence to defeat them. But cold facts cannot be ignored, or a party relieved from the consequences of his neglect, except upon some recognized principle of equity and justice. Such is not this case.

Judgment reversed.