GEORGE J. GRAVES and Another v. MODERN WOODMEN OF AMERICA.[1]

February 7, 1902.

Nos. 12,862—(201).

Mutual Benefit Society—Default—Custom of Clerk.

George H. Graves was a member of defendant society, having been received therein as such in April, 1894; a proper certificate, evidencing the fact, being duly issued to him. By the terms of his membership the by-laws of the society were a part and portion of his contract, and he was required thereby to pay into the treasury of the "local camp" of which he was a member certain assessments and dues at stated periods, in default of which he became suspended from the order without action by the society. At the time of his death, in August, 1898, he was in default in the payment of an assessment due August 1 preceding, and stood suspended from all rights and privileges in the society. The clerk of the local camp was in the habit of receiving from the members, including Graves, payment of assessments after they had

[1] Reported in 89 N. W. 6.

become due, and when the members stood suspended from the society for nonpayment; but this custom was not known to, or authorized or sanctioned by, defendant or the local camp, or by any officers of either, and was in direct violation of the by-laws of the society. *Held*, following Elder v. Grand Lodge, A. O. U. W., 79 Minn. 468, that the custom of such clerk, being unknown to the society, was ineffectual as a waiver of the by-laws requiring prompt payment of assessments, and, as Graves stood suspended from all rights and privileges in the society at the time of his death, plaintiffs cannot recover.

Appeal by plaintiffs from a judgment of the district court for Ramsey county, entered pursuant to the findings and order of Bunn, J. Affirmed.

*Charles H. Taylor*, for appellants.

*J. W. White* and *C. G. Laybourn*, for respondent.

BROWN, J.

Action by the heirs of George H. Graves to recover upon a mutual benefit certificate issued to him in his lifetime by defendant. The action was tried in the court below without a jury, and resulted in a judgment for defendant, from which plaintiffs appealed.

The facts are found by the trial court clearly and at length, but for the purposes of this opinion they may be stated briefly as follows: In April, 1894, Graves became a member of defendant society, and there was issued to him a benefit certificate by which his life was insured for the sum of $2,000. He died in August, 1898. Due proof of death was made to defendant, but payment of the policy was refused because of the failure of Graves in his lifetime to pay an assessment due on the certificate August 1, 1898. The defendant is a fraternal beneficiary society, receiving as members persons who come within the requirements and restrictions of its by-laws, and depends wholly upon the payment by the members of assessments, made at regular, stated periods, for funds with which to meet death losses and the expenses of the management of the society. The "head camp" of the society has supreme charge and control of its affairs, and is responsible for the payment of benefit certificates issued by it. The "local camps," representatives of the head camp, are located in different towns and

cities, and have authority to receive members into the society, and to collect and receive assessments from them, reporting the same to the head camp. The by-laws provide that a failure to pay an assessment duly made upon a member operates, of itself, without action by the society, as a suspension of the member in default, and, unless restored to membership, the benefit certificate issued to him is of no force or validity. The suspension operates as a forfeiture of all rights thereunder. Provision is made for reinstatement, but these provisions are not important, and need not be referred to. The by-laws provide that a failure to pay assessments operates ipso facto to suspend members from all rights and privileges in the society, and this provision controls the result in this case.

It appears very clear that deceased failed to pay an assessment duly made against him which fell due August 1, 1898. That assessment was never paid by him, nor by any other person for him. The payment he made on July 15, prior to his death, must, on plaintiff's theory of the case, refer to a prior assessment then past due. Under his certificate of membership and the by-laws, which were made an essential part of the contract between the society and its members, deceased stood suspended from all rights in the society at the time of his death, unless the contention of counsel for appellants to the effect that the society waived a prompt payment of the assessment is sustained. It is claimed in this connection that the clerk of the local camp of which deceased was a member was in the habit of permitting members to pay assessments made against them at any time within twenty days after they fell due and were payable, and that this practice and custom on his part was general, and such as to bind the society, and to abrogate the by-laws requiring prompt payment of such assessments. If counsel be correct in his contention, the judgment appealed from should be reversed; otherwise it must be affirmed.

So far as this feature of the case is concerned, it is not distinguishable from the case of Elder v. Grand Lodge, A. O. U. W., 79 Minn. 468, 82 N. W. 987. The question presented in that case was whether the conduct of the officer of the local lodge having the

authority and duty to collect assessments, in receiving assessments from members after the same had become due and payable, and when the members were in default and under suspension by operation of the by-laws, was binding on the society, and operated to waive the provisions of the by-laws providing a suspension of a member for his default. The custom of the local collector was clearly shown in that case, but it appeared beyond controversy that the local lodge had no knowledge of such custom, either actual or constructive. The court held that, because of the want of such knowledge on the part of the society, there could be no ratification or approval of the action of the collector, and that his conduct in the premises was not binding on the society; it being in direct and positive violation of the terms of its by-laws.

The case at bar cannot be distinguished, in view of the findings of the trial court, from that case. The learned trial court found in the case at bar that it was the custom of the clerk of the local camp to receive assessments from members after they became due, and after the date fixed by the by-laws for their payment, but further found that his custom and habit in this respect was never reported to the local camp, or known to the head camp, or to any of the officers of either; that the society was never advised but that assessments were promptly paid when due; and that neither the head nor the local camp ever waived compliance with the by-laws in this respect.

The head camp, being the main body or organization, with supreme power and control of the affairs of the society, must be treated as the principal in a case of this kind. It issues benefit certificates to members received into the society by the local camps, causes proper assessments to be made to meet death losses, and is responsible for the proper conduct of the affairs of the society, and solely liable for the payment of losses.

The local camp, clothed as it is with limited powers and duties delegated to it by the head camp, must be treated as the agent. Its authority is restricted to receiving into the society such members as apply therefor and come within the requirements imposed by the head camp, and to receiving and collecting assessments and dues from members, reporting the same to the head camp. The

clerk of the local camp cannot be treated as or held the agent of the society, in any proper view of the peculiar relations existing between the society and its members, as shown by its constitution and by-laws. The local camp exercises the functions of agent, and its clerk is nothing more than its officer performing clerical duties. The by-laws, which form a part of the contract between the society and its members, expressly provide that the clerk is the agent of the local camp, and not of the head camp, and that no act or omission on his part shall have the effect of creating any liability on the part of the society, or to waive any right or immunity belonging to it. His conduct in receiving payments and dues in direct violation of the by-laws, whether continued for any particular length of time or not, cannot, therefore, be binding on the society, in the absence of knowledge on its part of his habit and custom in that respect.

Such was the ruling in the Elder case, and a re-examination of the question discloses no reason for departing from the decision there made.

What facts, acts, or conduct on the part of its officers, or any of them, would constitute notice to the local camp, we need not determine. The question is not before us. We must say, however, that the specific facts set out in the findings are not such as to require a finding on the part of the trial court that the local camp had notice of the custom of the local clerk in respect to receiving payment of assessments in violation of the by-laws.

There is no conflict between the Elder case and Mueller v. Grand Grove, U. A. O. D., 69 Minn. 236, 72 N. W. 48. It was held in the latter case that the "local grove" was in the habit of permitting delinquent members to pay their assessments at any time, without regard to the requirements of the by-laws, and that this was a general custom known to the society, and operated to abrogate the by-laws requiring prompt payment of such assessments. As we understand it, it affirmatively appeared in that case that this habit and custom was known to the subordinate or local grove, and was not exclusively the custom of the officer charged with the duty of collecting assessments. The question as to the effect of a custom on the part of the local collecting officer in receiving assessments

from delinquent members was not involved or discussed in that case.

Our conclusions are in harmony with those reached by the learned trial court, and the judgment appealed from is affirmed.