## MARY KOZLAK v. POLISH NATIONAL ALLIANCE OF THE UNITED STATES OF NORTH AMERICA.[1]

### March 19, 1920.

### No. 21,605.

**Mutual benefit insurance — assessment — evidence of waiver of prompt payment.**

A member of a fraternal beneficiary society, composed of subordinate lodges or groups, belonged successively to two different groups. At the time of his death he was in arrears in payment of assessments. In an action by his beneficiary, evidence of conduct of the first group, amounting to a waiver of prompt payment of assessments, was admissible. The action of this group was the action of the defendant, and deceased was entitled to rely upon it, even after he joined another group, unless notice was brought home to him that a different policy was to be pursued.

Action in the district court for Hennepin county to recover $900 upon defendant's benefit certificate. The case was tried before Leary, J., who denied defendant's motion for a directed verdict, and a jury which re-

[1]Reported in 176 N. W. 911.

turned a verdict for $1,050.60. From an order granting defendant's motion for a new trial exclusively for errors of law occurring at the trial, plaintiff appealed. Reversed.

*Thompson, Hessian & Fletcher* and *George R. Smith,* for appellant.

*Joseph P. Kolesky,* for respondent.

HALLAM, J.

Defendant is a fraternal beneficiary society. Stanislaw Kozlak, deceased, was a member and held a beneficiary certificate, naming the plaintiff as his beneficiary. Kozlak died April 27, 1916. Plaintiff brings this action to recover the amount of the certificate. The defense is that on February 13, 1916, deceased was suspended for nonpayment of an assessment due February 1, that he was still under suspension when he died. Plaintiff admits the delinquency, but contends that defendant had followed the practice of accepting payment of assessments at irregular intervals after the expiration of the time fixed by their contract, and that, by so doing, it waived strict compliance with the contract as to time of payment. The court submitted this issue to the jury and the jury found for plaintiff. On further consideration, on motion for judgment notwithstanding the verdict or for a new trial, the court denied the motion for judgment, but granted the new trial, basing his order exclusively on errors occurring at the trial. Plaintiff appeals. The court did not specify the errors on which his order was predicated, but defendant urges that the court erred in admission of certain evidence and in submitting the question of waiver to the jury.

Defendant corporation operated with headquarters at Chicago, and it is composed of various subordinate "groups," or lodges, located in various parts of the United States. The constitution and by-laws of the corporation constitute part of the contract of insurance. By the terms of the by-laws the financial secretary of the group is the collector of dues and assessments. By one section every member is required to pay 12 assessments a year, each "payable monthly in advance on the first day of each and every month." By another section payments are to be made at a regular meeting of the group, unless the financial secretary designates a different time and place. Since the meetings of the groups are usually not held on the first day of the month, the effect of this provision

is no doubt to extend the time for making payment until the time of a regular meeting. Every member, who, within the time prescribed for that purpose, fails to pay an assessment, becomes, through the fact of nonpayment itself, suspended, and loses all rights and privileges in the order. The financial secretary is required to report all cases of suspension to the general secretary of the order within 24 hours after suspension and "the general secretary is bound, after receiving notice of suspension, to notify the member by mail of the fact of his suspension, in order, in this manner, to prevent any abuse on the part of the officers of groups," though neglect to send this notice does not affect the validity of the suspension.

A suspended member may be reinstated within 30 days, by paying, personally, at a regular meeting, the whole amount in arrears, with 25 cents fine. A member suspended more than three months must make application to the group for reinstatement and submit to a medical examination. There is no provision for reinstatement of a member suspended more than 30 days and less than three months. The by-laws provide that during the time of suspension of a member the financial secretary "shall not have the right to receive any money whatsoever for assessments, dues, arrears or fines, with [the] exception of the money which shall be deposited * * * at the time of filing an application for reinstatement." This clearly contemplates an application for reinstatement.

Deceased joined defendant order in December, 1906. During his membership he belonged to three different groups, number 99 until January 19, 1913, number 22 from that day until March 14, 1915, and number 1799 from that time on. There is no evidence as to the conduct of number 99 or its officers. While he was a member of number 22, the evidence is that he frequently failed to pay promptly, sometimes being behind for two or three months, that nevertheless he was never suspended or reported to the central body as delinquent. He had a deposit with the financial secretary that would carry him over one month. Beyond that, the amount necessary to keep him in good standing was drawn from the treasury of the local group. The evidence is that it was the habitual practice of this group to carry members, who were thought good, for three months, or, as the financial secretary put it: "You got

different kinds in the lodge. Some members say you have to wait for one month and some members say [you have to] wait for another month. Some good members can wait for three months." "Everybody knows Mr. Kozlak is a good man and a good member, and if he don't pay this month he will pay next month. Everybody can trust him."

Had Kozlak died while a member of number 22, the propriety of submitting the question of waiver would have been beyond doubt. Defendant contends that this evidence should not have been received. We think it was properly received. The subordinate group is the sole agency by which defendant transacts its business with its members. If the conduct of the subordinate group is such as to operate as a waiver of timely payments, such waiver is binding on defendant. Dougherty v. Supreme Court I. O. F. 125 Minn. 142, 145 N. W. 813. It matters little whether there is one such agent, or two acting successively. The defendant is bound by the acts of each to the extent of its action in defendant's behalf. If the conduct of both was consistent, the whole would be admissible as part of one connected transaction. If the custom and practice of the second group differs from that of the first, and that fact was brought home to him, he could not, within the principle of the cases cited, rely on the custom and practice of the first. But, inasmuch as the action of number 22 is binding on defendent, because it is in effect the action of defendant, we are of the opinion that deceased was entitled to rely on the conduct of group number 22 as the policy of defendant and its groups, even after he joined number 1799, unless notice was brought home to him that a different policy was there pursued.

It does not conclusively appear that he had such notice. In fact, the policy pursued in number 1799 was different from that pursued in number 22, but it was not much more in accordance with the by-laws. The provisions as to suspension and reinstatement were not followed. In number 1799 the monthly meeting was on the second Sunday in the month. The financial secretary made collections after the meeting, as well as before and at the meeting. He tried to collect from those members who had not paid at the meeting. He testified "if they were not far" he "went over to find out what they mean," because he did not want to "suspend them right away." He habitually held his report until the last of the month and reported no suspensions of members who had paid

prior thereto, then, if there were any who still had not paid, he reported them suspended as of the date of the meeting day. After members were so reported, if they paid before he made his next report, he would accept their money and without any application or other formality mark them "unsuspended." In fact he tried to collect from them as best he could and this practice was followed until the expiration of 90 days. This practice was general and doubtless known to the group. About a month before Kozlak died, he met the financial secretary and said to him "come home with me [and] I will pay the dues." The secretary told Kozlak he could not come then, but if he got a chance he would call later. He said if Kozlak had handed him his dues at any time before he died, he would have accepted them and that this was his practice generally.

Deceased was reported suspended February 13, 1916, and he had been reported suspended once before. There is no direct evidence that he was ever notified of that fact or that he was ever advised that the practice in number 1799 was different from that followed in number 22. There is no suggestion that when he made payment following his former alleged suspension, he was advised, or knew, that he was applying for reinstatement, and that he was not making payment to keep himself in good standing. There is no evidence that the 25 cent charge required on reinstatement by the by-laws above cited was ever exacted from him during his membership in either group. There is no suggestion that any application for reinstatement was ever exacted from deceased. The inference from the testimony is plain that these requirements of the by-laws were never exacted from any member.

When such requirements are imposed on a suspended member as a condition to reinstatement, the acceptance of overdue assessments from a member, without insisting or ever intimating that anything more than payment is required, at least suggests an understanding that the transaction constitutes a satisfaction of the original promise to pay and that a suspension did not exist. The questions of intent and understanding are in such a case open to the jury, and the jury are justified in holding that such payments were received on the understanding that the member thereby maintained a recognized, existing, good standing, and not that it was necessary in order to regain lost rights. Villmont v. Grand Grove U. A. O. of Druids, 111 Minn. 201, 126 N. W. 730; Leland v. Modern

Samaritans, 111 Minn. 207, 126 N. W. 728; Suits v. Order of United Commercial Travelers, 139 Minn. 246, 247, 166 N. W. 222, Ann. Cas. 1918E, 508; Reisz v. American Legion of Honor, 103 Wis. 427, 79 N. W. 430.

There are these outstanding facts. Decedent had been a member of defendant order for more than nine years before his last default. He had always paid his dues and assessments. Often he had failed to pay on time, but never with the thought of dropping his insurance. On this last occasion, he had no such thought. The financial secretary knew it. Defendant is a fraternal society. In a fraternal way it had extended him indulgence. We are of the opinion that it did not conclusively appear that notice was ever brought home to deceased that the indulgence, to which defendant had accustomed him, would cease.

We hold that the evidence as to the practices of group number 22 was properly received and that the case was properly submitted to the jury. Finding no error occurring at the trial, the order granting a new trial will be reversed.