# ROSE TOLES v. EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES.[1]

May 8, 1925.

No. 24,571.

**Acceptance of overdue premiums while assured was critically ill a waiver of forfeiture.**

The evidence sustains the jury's finding that the defendant assurance society, which accepted overdue premiums, with the knowledge that the assured was critically ill, and retained them, waived the forfeiture or lapse of a life policy for nonpayment of premiums, though the receipt which it gave was conditional.

1. See Life Insurance, 37 C. J. p. 639, § 441.

Action in the district court for Hennepin county. The case was tried before Guilford, J., and a jury which answered in the affirmative the question whether defendant waived insured's default in payment of premium. Judgment was ordered in favor of plaintiff. Defendant appealed from an order denying its motion for a new trial. Affirmed.

*Lancaster, Simpson, Junell & Dorsey,* for appellant.

*Leonard, Street & Deinard,* for respondent.

DIBELL, J.

Action by the plaintiff, Rose Toles, individually and as administratrix of her deceased husband, Morris Toles, to enjoin the foreclosure of a mortgage made by her and her husband to the defendant Equitable Life Assurance Society, to compel its satisfaction, and to recover a sum claimed to be the balance due upon a policy of insurance on the life of Morris Toles, in which the plaintiff was individually beneficiary, pledged as security for the mortgage debt. There were findings for the plaintiff and the defendant appeals from the order denying its motion for a new trial.

[1]Reported in 203 N. W. 619.

On June 1, 1922, the defendant assurance society insured the life of Morris Toles in the sum of $3,000. Rose Toles was the beneficiary. On the same day Mr. and Mrs. Toles gave the assurance society a mortgage on property in Minneapolis for $3,000 payable in monthly instalments for ten years. The insurance policy was deposited as collateral to the mortgage. The monthly payments were $40.20 each. Of this sum $7.29 was applicable to the insurance, and the balance to the loan. Upon the death of Toles, with the policy in force, the insurance would pay the loan, and there would be left an excess depending upon the time the policy had run, and the amount which the debt had been reduced. The loan and insurance constituted the "Home Purchase Plan" of the society, the nature of which need not be stated further.

The policy allowed grace of 31 days in payments. The instalment of January 1, 1923, was not paid until February 8, 1923, when it was paid along with the February instalment. The policy provided that, if it should lapse for nonpayment, it might be reinstated at any time upon production of evidence of insurability satisfactory to the society and the payment of all overdue payments.

Toles was sick during the latter half of January, 1923. On February 8, 1923, one King, the brother of Mrs. Toles, gave the defendant his check of $80.40 for the January and February instalments. The money went into the bank account of the defendant and it still has it. King testifies, and there is no effort to contradict him, that he told the defendant that Toles was sick and unconscious; that he had been laid up for two weeks, very sick; that he was affected with "blood poisoning in his brains and he was in an unconscious condition and that is why, receiving this notice through my sister, I came in and paid the bill at the request of my sister;" that the sickness was the reason that it had not been paid; that he wanted to pay the February premium as well as that of January; and that the defendant gave him a receipt and told him to have Toles come to the office "when he got well" or "if he got well." The receipt was as follows:

"Agency at Mpls. —— 2-8, 1923.

"Received from Morris Toles the sum of 80.40/100 in payment of installments due the first day of Jan. & Feb. 1923 on account of Home Purchase Loan No. 4922255, which is now in default.

"It is understood and agreed, however, that said loan will not be reinstated until all arrears of installments, taxes and assessments and all expenses of collection, including attorneys' fees and disbursements, have been paid, and the policy of life insurance assigned as collateral has been properly reinstated in accordance with the rules of the Society. If said policy is reinstated, the amount for which this receipt is given will be applied in payment of the installments specified but the loan will not be reinstated until all other arrears and expenses mentioned above have been paid. If said policy is not reinstated however within 30 days from date, then and at any time thereafter the amount received may be applied on account of principal, interest and expenses of collection as the Society may elect."

Toles died on February 11, 1923. Proof of his death in due form was given the society the same month. The question is whether the evidence sustains the finding of the jury that the defendant waived the lapse or forfeiture of the policy consequent on nonpayment, and this includes a waiver of proof of insurability.

It must be conceded that the society was apprised of the physical condition of the insured. There was no such thing as proof of insurability when the insured had been sick of brain trouble for weeks and was unconscious. The society knew that the $80.40 was offered for the purpose of removing defaults and reinstating the policy. If the conditional receipt had not been given there would be no question but there was a waiver to be found by the jury or perhaps to be declared by law. We reach the conclusion that the giving of this receipt, in view of the circumstances attending and which followed, does not make the question of waiver one of law to be declared by the court in the affirmative. The important facts are that the society knew that no proof of insurability could be made; that though in the receipt given there was a reference to re-

instatement, King was told to have Toles come in; that it received proof of death, the circumstances of which the record does not show, the bare fact being alleged and admitted; and that it kept the money, never has applied it .or offered to return it, in fact did nothing until June 18, 1923, when it commenced foreclosure.

We read all the cases cited to us. The general rules as to waiver have been stated over and over again. Dunnell, Minn. Dig. §§ 4675-4688. The case of McQuillan v. Mutual R. Fund Life Assn. 112 Wis. 665, 87 N. W. 1069, 88 N. W. 925, 56 L. R. A. 233, 88 Am. St. 986, much relied upon by the plaintiff, fails of great force because there was there no conditional receipt. The case of Gould v. Equitable Life Assur. Soc. 231 N. Y. 208, 131 N. E. 892, much relied upon by the defendant, likewise fails because the society had no notice of the assured's illness. We are content to hold that from the circumstances detailed a jury might find a waiver.

Order affirmed.