CLINTON WITTENSTEN v. BROTHERHOOD OF AMERICAN YEOMEN.[1]

November 19, 1926.

No. 25,456.

**Suspension for nonpayment of insurance dues waived by action of local lodge.**
   Decision controlled by Behnke v. Modern Brotherhood of America, 167 Minn. 104.

   Mutual Benefit Insurance, 29 Cyc. p. 176 n. 80; p. 192 n. 76; p. 246 n. 50.

Defendant appealed from an order of the district court for Marshall county, Grindeland, J., denying its motion for judgment notwithstanding the verdict or for a new trial. Affirmed.

*H. W. Pitkin, Julius J. Olson* and *Rasmus Hage,* for appellant.

*A. N. Eckstrom* and *W. O. Braggans,* for respondent.

STONE, J.

In this action to recover upon a life insurance contract issued by defendant, a fraternal beneficiary association, there was a verdict for plaintiff. The appeal is by defendant from an order denying its alternative motion for judgment or a new trial.

The sole defense is that the deceased, Charles Christensen, had been automatically suspended for nonpayment of dues under the bylaws of defendant which were a part of the insurance contract. He became a member of defendant order April 4, 1923. His first payment under the insurance contract was in advance for April, May and June, 1923. The dues for July, August and September he paid on September 27th. His next payment was October 11, 1923, and covered all payments and assessments until January 1, 1924. His dues for January and February, 1924, were advanced for him by the

correspondent. He finally paid them March 6th. His next and last payment was made April 28, 1924. It covered the four months ending June 30, 1924. He died October 24, 1924, being then in arrears for over three months.

Without going into details, the jury could well have found that defendant's local lodge or order, called a "Homestead," of which Mr. Christensen was a member, had for a long time permitted its recording and financial officer, called "Correspondent," to use his own judgment in extending credit to delinquent members. Notwithstanding their nonpayment of dues it was his custom, well established by the evidence, to carry them for extended periods. Sometimes he remitted to the Brotherhood the dues of the delinquent member out of the funds of the Homestead. Sometimes he made such remittances out of his own funds. In such cases the delinquent members were carried as though there had been no suspension. The other local officers were extended such indulgences and at the time of Mr. Christensen's death even the "Foreman," chief officer of the Homestead, was in arrears and was being carried by the "Correspondent." The custom of indulging members as indicated was as well proven as was a similar practice in the case of Behnke v. Modern Brotherhood of America, 167 Minn. 104, 208 N. W. 542. We consider that case controlling and so there must be an affirmance.

It is argued for defendant that the action of the Correspondent in carrying delinquent members was not that of the Homestead, which concededly had never taken any formal action upon the matter. It had never formally authorized the custom. On the other hand, it had not ordered its discontinuance. The evidence of its generality and long continuance is such that the Homestead must be charged not only with knowledge but also with approval and consent to its continuance. The subject was so thoroughly treated by Judge Lees in the Behnke case that further discussion is not warranted.

It is argued that we have gone a long way to sustain actions of this kind against the defense of automatic suspension for nonpay-

ment of dues.   That may be true.   The answer, and the thing which justifies our position, is that the indulgence of delinquent members of such associations by the local lodges has not only gone to great lengths but has become so notorious that the parent organizations, the supreme authority, must be charged generally with notice of its existence and character.   They attempt to vest their local and subordinate branches with a very narrow authority but permit them to exercise what, in appearance at least, is a much broader power. They cannot escape the fact that the local lodge is the agent of the parent body and that the latter has a duty to perform in the premises which, if performed, will put an end to deceptive indulgences of delinquent members and prevent their being lulled thereby into a careless attitude toward their life insurance and a sense of false security.   The remedy is obvious.   The escape from the rule of the Behnke case is easy, and if they do not avail themselves of it and exercise over their local lodges the necessary degree of actual control, fraternal benefit associations will have only themselves to blame.

Order affirmed.