## ELLA MAY SPECK v. BROTHERHOOD OF RAILROAD TRAINMEN AND ANOTHER.[1]

December 21, 1934.

No. 30,188.

*Kerr, Nelson, O'Neill, Mohan & Dudley,* for appellant.
*Walter T. Ryan,* for respondent.

JULIUS J. OLSON, JUSTICE.

Action to recover upon a life insurance contract issued by defendant, a fraternal beneficiary association. Trial was had before a jury, resulting in a verdict for plaintiff. Defendant appeals from an order denying its alternative motion for judgment or a new trial.

[1]Reported in 258 N. W. 29.

Defendant organization consists of a grand lodge and numerous subordinate lodges chartered by the grand lodge. The grand lodge is the body that enters into insurance contracts, and it alone is responsible for death losses. The subordinate lodges have the primary authority to admit applicants to membership, subject to the rules and regulations prescribed by the parent order. So too the local lodge has general charge and supervision in the matter of collection of premiums or assessments and likewise has and exercises authority to reinstate suspended or expelled members, subject however to rules and regulations issued by the grand lodge.

William H. Speck, the insured, had been a member of the local or subordinate lodge of the defendant in Minneapolis over a period of more than 20 years. Plaintiff, his surviving wife, is the named beneficiary in the insurance contract. Under the constitution and regulations of the grand lodge the insured was required to pay assessments on his policy the first of each month. He neglected to pay the assessment due November 1, 1932, and under the constitution and rules of the order was automatically suspended on that day. The constitution permitted a readmission without a medical examination if within 60 days from the date of suspension all assessments were paid and an appropriate application for reinstatement was made to and favorably acted upon by the local lodge. It was also a rule of the defendant that at least two meetings each month were to be held by the subordinate lodge. In the event an application for reinstatement with the required payment were made, it was necessary that the same be submitted at a meeting of the lodge, at which time the matter was to be submitted to an investigating committee, which was to report its findings to the lodge, and, at the next meeting, that a vote be taken by the membership after such report. During the month of December, 1932, the two meetings of the lodge were on the 9th and 26th. The principal officers of the local lodge were Field, president; Lyons, treasurer; and Doberstein, secretary. Sometime in November, 1932, the treasurer of the local lodge requested Mr. Field as president thereof to communicate with the insured Speck, also with one LaFleur, and Ireton, for the purpose of securing their reinstatement within

the two calendar month period. Field called upon Ireton and LaFleur, advising them of their failure to pay dues and urging them to execute the required readmission blanks. Both these men signed applications for reinstatement and paid their dues on December 16, and both were promptly reinstated at the December 26 meeting. Speck was not interviewed by Mr. Field until December 28, 1932, at which time only three days remained within which to become reinstated. On that day Mr. Field called at the home of Mr. Speck and solicited him to sign the required blank and also to pay $38.41, that being his dues for the delinquent period plus the usual charge imposed in such cases for reinstatement. Mr. Speck duly paid the sum mentioned, conceded to be adequate, and signed the usual application blank. Mr. Field retained the application and the money in his possession without reporting it to the treasurer until the morning of January 1, 1933. He testified that he had other prospects to call upon and that he intended, as he had done in many other cases, to wait until he had $50 or $100 to turn in, as he knew from past experience that the treasurer would accept the money. On the forenoon of that day Mr. Field learned that the insured had died during the early morning hours of January 1. Immediately thereafter he called up the treasurer of the local lodge and advised him of what he had done. When the money and application were received by Mr. Field he gave to the insured his individual receipt for the money but not an official receipt. He informed Mr. Speck that the official receipt would come from the treasurer. Mr. Field, in addition to being the president of the local organization, was also chairman of the grievance committee and looked after the interests of the members of the brotherhood employed by the Omaha railway company. The insured was an employe of that railway and had been such many years. The treasurer, upon being informed of what Mr. Field had done, told him that he could not accept the money so collected but would take the matter up with the grand lodge. Later, evidently having been advised that the insured stood suspended, the money collected from the insured on December 28 was tendered back to plaintiff, but she refused to accept the same. This action followed.

The various constitutional and other formalities with reference to reinstatement of expelled or suspended members were not generally observed by the local lodge. It appears beyond question that both LaFleur and Ireton had made their application on December 16. Under the strict rules of defendant the final action by vote of the membership upon their applications should not have come before the lodge at the second meeting thereof that month, that is, December 26. That being the last meeting of the month, it necessarily would follow that action of the lodge upon the applications could not take place until the first meeting in January, 1933. As such, the 60-day time limit would have expired. These men were reinstated at the December 26 meeting. Defendant concedes that if death had occurred as to either of them there would be no doubt of defendant's liability. But it is asserted that Speck did not occupy as favorable a position as these men, that as a matter of law his application came too late, and that the insurance contract had lapsed. It is further contended that Mr. Field had no authority to collect the delinquent payments; that these could only be collected by the treasurer, Mr. Lyons; that Field was not acting within the scope of his authority, and his acts were for and in behalf of the insured and could in no event be binding upon defendant. The case hinges upon whether the local lodge had by its conduct in permitting members to be in arrears from time to time established a custom which led the members to believe that the failure to pay dues punctually and within the time prescribed by defendant's constitution would not result in a forfeiture of the member's certificate. Defendant cites and relies upon such cases as Elder v. Grand Lodge, 79 Minn. 468, 82 N. W. 987; Graves v. Modern Woodmen, 85 Minn. 396, 89 N. W. 6; Mueller v. Grand Grove, 69 Minn. 236, 72 N. W. 48; Villmont v. Grand Grove, 111 Minn. 201, 126 N. W. 730; Ireland v. Modern Samaritans, 111 Minn. 207, 126 N. W. 728.

The court instructed the jury that "in order to warrant a recovery in this case, plaintiff must show by a fair preponderance of the evidence that this local lodge knowingly allowed deceased and others to be reinstated in violation of the contract and by-laws, and

that this custom had been acquiesced in by the lodge, for such a length of time that deceased, acting as a reasonable man, was led to believe that in the payment of dues and assessments to Mr. Field at the time, as claimed by plaintiff, would result in reinstating his policy of insurance; that he had a right to pay them as he did, and that such payment would reinstate his policy or contract of insurance.

"If the acts of the local lodge did not lead deceased to believe, or would not have led a reasonable man to believe that the payment of dues and assessments, under the circumstances as established by the evidence here, would reinstate his contract or policy, then there would be no harm to him and defendant would not be estopped and plaintiff cannot recover here."

The entire issue therefore hinges upon whether or not the theory of the trial court, in view of the evidence here appearing, is error.

Plaintiff established the fact that the treasurer had requested Mr. Field to solicit the reinstatement of several men all of whom were in the same situation as the insured in the instant case. Mr. Lyons, the treasurer, testified of and concerning this matter as follows:

Q. "You did call Mr. Field in respect to Speck?

A. "Yes, Speck and others.

Q. "What was your object?

A. "He, being the local chairman and working on that road, it was customary to call the local chairman to talk to them, speak to the men behind in their dues and try to get them back in.

Q. "It was your object to have Field try to induce Speck to come back?

A. "Naturally."

Mr. Field testified that he very frequently collected money from members who were in default and that he turned the proceeds over to the treasurer. He said that he collected as much as $150 at times after he went around and collected from the delinquent members and that he did so on repeated occasions. This custom had existed ever since 1930 as far as Mr. Lyons was concerned. He

himself had been accustomed to do this ever since 1919. It seems that the local lodge in this instance was formed in 1929 out of membership formerly belonging to another lodge of the same type. The local lodge here involved was organized because of the enlargement of the membership. The following also appears in the testimony of Mr. Field:

Q. "What members did you solicit and turn the money over to Mr. Lyons?

A. "Practically every member on my road.

Q. "How many?

A. "At the present time there are 33 and at one time there was only 28.

Q. "Have you done that since Mr. Lyons has been treasurer?

A. "Yes.

Q. "With every member?

A. "Practically every member with perhaps a few exceptions."

There is other testimony further enlarging upon this phase of the case. It seems too clear for argument that there was a fair fact question involved and that the court properly submitted the same to the jury for decision.

Numerous cases have been before this court involving this very question. It will not be necessary to cite all, but the following are fairly illustrative: Mee v. Bankers' L. Assn. 69 Minn. 210, 72 N. W. 74; Sauerwein v. Grand Lodge, 121 Minn. 229, 141 N. W. 174; Kozlak v. Polish Nat. Alliance, 145 Minn. 247, 176 N. W. 911; Bowman v. Surety Fund L. Ins. Co. 149 Minn. 118, 182 N. W. 991; Behnke v. Modern Brotherhood, 167 Minn. 104, 208 N. W. 542; Wittensten v. Yeomen, 169 Minn. 162, 210 N. W. 853.

We think the learned trial court correctly disposed of the case, and the order appealed from is affirmed.