ELIZABETH WAGNER v. SECURITY MUTUAL LIFE INSURANCE COMPANY.[1]

May 8, 1936.

No. 30,781.

*Baldwin, Holmes, Mayall & Reavill,* for appellant.
*M. J. McKeon* and *John Swinland,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff is the surviving wife of George A. Wagner (who departed this life January 21, 1935) and the named beneficiary in a policy of life insurance issued by defendant upon his life. In the court below she successfully maintained her action to recover the promised amount provided by the policy. Defendant's blended motion for judgment notwithstanding or a new trial was denied, and it appeals.

The facts are not involved and may be summarized thus: One Maher, prior to August 1, 1934, was a soliciting agent for defendant at Duluth. Since that date he has been its general agent there. On December 6, 1933, Maher secured an application for life insurance on the part of Wagner for $2,500 payable to plaintiff as the beneficiary. The policy here involved was issued bearing date De-

[1]Reported in 267 N. W. 216.

cember 14, 1933. It was promptly mailed to the agent but was not delivered to the insured until March 21, 1934, more than 90 days after its date, due to the delay of the insured to pay the initial premium. Because of the time that had elapsed between the date of the policy and its actual delivery it became necessary for the insured to furnish defendant with a certificate of good health and insurability. At that time, upon the assured's request, the premiums were to fall due in semiannual payments June 14 and December 14, instead of the annual premiums specified in the policy. He then paid the first semiannual payment. On June 14 the second premium payment became due. He was unable to make the same. Instead he made a payment of $5 to Maher and executed a promissory note for the balance, and also entered into a premium extension agreement deferring the balance until August 14. When that note fell due he was unable to pay the same. Instead of meeting the same in full he paid $2.50 and executed a new note and a new extension agreement extending the time of payment to September 14. On the last named day he again failed to pay the note. On September 24 he applied for reinstatement and furnished a certificate of good health and insurability. The policy was reinstated on September 27. At that time the insured paid $8 and executed a new note and a new extension agreement, the last named note falling due October 14. That note was not paid until October 16. This then paid the second semiannual payment due that year.

The next semiannual payment, which fell due December 14, 1934, was not paid. Under the terms of the policy there was a grace period of 31 days. The insured became ill January 6, 1935, and was taken to the hospital on January 16. On that day Maher called at the hospital and there met the insured and plaintiff, also a Mr. Cummings, a family friend. There was a conversation at that time amongst these parties. Maher informed plaintiff and the insured that two other policies were "all right" but that the present policy was two days past due. Upon inquiry on the part of plaintiff as to what could be done, Maher replied that if she would pay $10 the policy would be "perfectly all right" or "absolutely all right." Mr. Cummings offered to pay the entire premium. Maher informed them

that $10 would be entirely satisfactory and that it was unnecessary to make a larger payment. Accordingly, plaintiff went to the office of the company and there paid the stipulated sum. The following receipt was issued and delivered to her:

"No. 491                          January 16, 1935.

"Received of Dr. George A. Wagner, Ten & No 100ths Dollars, Partial Payment on Prem. due Jan. 14, 1935, Policy #262275.

"Subject to reinstatement.

"$10.00

"Chester J. Maher
"E. C. E."

There is a dispute in the evidence with regard to the conversation taking place. We have stated the facts in accordance with the evidence of plaintiff as fortified by that of Mr. Cummings. Maher claims that the $10 deposit was taken and accepted conditioned upon approval by the head office of the company in New York. This accounts, so he claims, for the last statement in the receipt, "Subject to reinstatement."

Plaintiff claims that there was no condition respecting the force and effect of the payment; that while there was some talk that Maher would write the company, there was nothing said of any condition or limitation affecting the efficacy of the payment made to put the policy into full force and effect. She testified that Maher said "he was sure" everything was secure and "all right."

Maher wrote his company on January 17 and therein reported the situation in accordance with his testimony at the trial. Defendant refused to grant reinstatement and claimed a lapsation. Its letter was written to Maher January 24, 1935, after the assured's death.

Important also is the admitted fact that Maher did not attempt to make a refund of the $10 payment until February 16, at which time he mailed plaintiff his personal check for that amount. This she refused to accept.

In behalf of plaintiff there was testimony introduced tending to show that as to the other policies issued by defendant upon the life

of the assured not infrequent delayed payments had been made and accepted and that this system extended over a period of several years; that the payment in respect of premiums on the present policy was simply a continuation of what formerly had been done on many occasions in respect of the other policies.

There is also ample testimony to establish that Maher had much more authority than the customary limited authority of a soliciting agent. He supervised a very large territory in northeastern Minnesota as its "general agent." He appointed agents, looked after collections of premiums, and had control of the agents appointed by him. He made regular reports and received and carried out instructions received from time to time from defendant. He collected and deposited and also withdrew defendant's funds which were carried in a bank at Duluth in joint account between defendant and himself. He had possession and control of premium receipts, including renewals. Some of these receipts were held in his office as long as a week after the expiration of the grace period. In looking after the company's affairs he accepted and daily deposited checks and cash payments made by policyholders. He had an interest upon a commission basis in not only the first premium paid but also in the subsequent nine years of renewals. It will thus be seen that he had rather extensive discretionary powers not possessed or exercised by the ordinary soliciting insurance agent.

On the merits we think the evidence justified submission of the following instruction by the court, which covers the field essential to determination of liability:

"Now, * * * if you believe and find from the evidence that on and prior to January 16, 1935, the defendant's agent had full notice and knowledge that the insured was then sick at the hospital and was physically entirely unfit for reinstatement for insurance, and that on said date the plaintiff paid the defendant's agent the sum of ten dollars to apply on the premium due December 14, 1934, and that the balance of said premium was offered to said agent, and that said agent stated that it was not necessary to pay said balance at that time, or words to that effect, and that the plaintiff was then

assured by said agent that said policy would be continued in force, and if you further find that said money was retained by said agent or the defendant and that no attempt was made to return the same until after the death of the insured, and that said agent did not notify or inform either the plaintiff or the insured at any time prior to the death of the insured that defendant would treat said policy as having lapsed for nonpayment of said premium, and if you further find that the insured had been permitted to make other payments of premiums after expiration of the grace periods or dates specified for payments in extension agreements, then you may also find that said policy did not lapse, even though said payment and offer were not made within the grace period and even though, as it appears, said agent inserted or caused to be inserted in the receipt given for said payment, the words 'subject to reinstatement.' "

The instructions quoted, in view of prior decisions of this court, appear to be proper. Thus, in James v. Merchants L. & C. Co. 118 Minn. 146, 150, 136 N. W. 582, 583, in a situation in many respects similar to the issues here for determination the court said:

"The question here was whether a payment made after the same became due, and accepted and retained by defendant, was effectual, and retained the policy in full force and effect, and not whether the failure to pay before the death of the insured was waived by a general custom such as that shown in the cases referred to; or, expressed in a different way, whether, since decedent had been permitted to pay at irregular times, monthly or quarterly, and after the due date, defendant can be heard to repudiate a payment so made, which it still retains. Of course, defendant denied the payment; but the jury found it to have been made, and it seems reasonably clear that defendant cannot under such circumstances invoke the doctrine of forfeiture. * * * Nor is the question of the authority of the agent to waive a strict compliance with the contract as respects payment of premium presented. Presumptively the payments made by decedent were reported to the company when made, thus giving notice to defendant of the irregular method of making them."

To the same effect is Toles v. Equitable L. Assur. Society, 163 Minn. 203, 205, 203 N. W. 619, 620. There, as here, a conditional receipt was given reciting amongst other things that the policy was in default; that if it was not reinstated as provided by the rules of the company the money was to be applied upon the mortgage held by it. The money was retained by the company, and this court came to the conclusion that, "If the conditional receipt had not been given there would be no question but there was a waiver to be found by the jury or perhaps to be declared by law. * * * The important facts are that the society knew that no proof of insurability could be made; * * *." Other cases bearing upon this phase of the case are commented upon and cited in Speck v. Brotherhood, 193 Minn. 140 (cases cited on p. 145), 258 N. W. 29.

Here defendant's general agent took the money well knowing the insured's critical condition. The assured, as well as the beneficiary, was told that the policy would be "all right" by the making of this payment. Obviously he did not act as the agent of the plaintiff nor of the assured. His act was that of the company. Under the statutes, 1 Mason Minn. St. 1927, § 3757, he represented his employer, the defendant. His act thereby became its act.

What has been said disposes of the case on its merits and therefore makes it unnecessary for us to consider other assignments of error.

The order is affirmed.